EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
NATHANIEL B. WALKER (Cal. Bar No. 224473)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0282
     Facsimile: (213) 894-0141
     E-mail:    nathaniel.walker@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE EXTRADITION OF<br><br>KENNETH WAYNE FROUDE,<br><br>A Fugitive from the Government of Canada. | No. CV 15-8623-JLS-E<br><br>GOVERNMENT'S MEMORANDUM IN SUPPORT OF EXTRADITION<br><br>Hearing Date: April 11, 2016<br>Hearing Time: 9:30 a.m.<br>Location:     Courtroom of the<br>              Hon. Charles F.<br>              Eick |

     On behalf of the government of Canada, complainant United States

of America, by and through its counsel of record, the United States

Attorney for the Central District of California and Assistant United

//

//

States Attorney Nathaniel B. Walker, hereby submits its memorandum in support of extradition in the above-captioned matter.

Dated: March 14, 2016                    Respectfully submitted,

                                         EILEEN M. DECKER
                                         United States Attorney

                                         LAWRENCE S. MIDDLETON
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                              /s/
                                         _____
                                         NATHANIEL B. WALKER
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...........................................iii

MEMORANDUM OF POINTS AND AUTHORITIES..............................1

I.   INTRODUCTION.................................................1

II.  STATEMENT OF FACTS..........................................2

     A.   FROUDE Has Failed to Serve the Entirety of His
          Sentence...............................................3

     B.   FROUDE Has Failed to Comply With the Terms of the LTSO....4

III. PROCEDURAL OVERVIEW.........................................6

     A.   An Extradition Hearing Follows Procedures Distinct
          From Criminal Proceedings..............................6

     B.   Extradition Hearings Rely on Written Submissions and
          Do Not Require Live Witnesses..........................8

     C.   A Fugitive's Ability to Challenge Evidence is Limited....10

     D.   An Extradition Hearing Excludes Technical and
          Affirmative Defenses..................................12

     E.   Considering Matters Other Than Sufficiency of the
          Evidence is the Exclusive Province of the Executive
          Branch................................................13

IV.  ARGUMENT AND ANALYSIS......................................14

     A.   The Role of the Judge Presiding Over Extradition
          Proceedings is Well-Defined...........................14

     B.   The Legal Requirements for Certification are Well-
          Settled...............................................16

          1.   This Court Has Authority Over These Proceedings.....17

          2.   This Court Has Jurisdiction Over the Fugitive.......17

          3.   The Extradition Treaty Between the United States
               and Canada is in Full Force and Effect.............18

          4.   FROUDE's Crimes are Covered by the Treaty..........18

          5.   The Evidence Establishes Probable Cause to
               Believe that FROUDE has Failed to Serve the
               Entirety of His Sentence..........................20

i

## <u>TABLE OF CONTENTS (CONTINUED)</u>

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

        6.    The Evidence Establishes Probable Cause to
           Believe that FROUDE Has Violated the Terms of His
           LTSO..................................................22

   C.   Dual Criminality is Satisfied With Respect to Both
      Grounds Upon Which Extradition is Sought.................23

V.   CONCLUSION.....................................................25

**TABLE OF AUTHORITIES**

FEDERAL CASES

Afanasjev v. Hurlburt,
    418 F.3d 1159 (11th Cir. 2005),
    cert. denied, 546 U.S. 993 (2005)..........................9

Ahmad v. Wigen,
    910 F.2d 1063 (2d Cir. 1990).........................14

Artukovic v. Rison,
    784 F.2d 1354 (9th Cir. 1986)..............................9

Austin v. Healey,
    5 F.3d 598 (2d Cir. 1993)................................17

Barapind v. Enomoto,
    360 F.3d 1061 (9th Cir. 2004)............................8

Barapind v. Enomoto,
    400 F.3d 744 (9th Cir. 2005)....................10, 21

Barapind v. Reno,
    225 F.3d 1100 (9th Cir. 2000)...........................15

Benson v. McMahon,
    127 U.S. 457 (1888)...................................21

Bingham v. Bradley,
    241 U.S. 511 (1916)...............................passim

Blaxland v. Commonwealth Director,
    323 F.3d 1198 (9th Cir. 2003)..........................14

Bovio v. United States,
    989 F.2d 255 (7th Cir. 1993).......................8, 12

In re Chan Kam-Shu,
    477 F.2d 333 (5th Cir. 1973)..........................18

Charlton v. Kelly,
    229 U.S. 447 (1913)...............................6, 11,12

Clarey v. Gregg,
    138 F.3d 764 (9th Cir. 1998)..........................19

Collins v. Loisel,
    262 U.S. 426 (1923)....................................7

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

Collins v. Loisel,
    259 U.S. 309 (1922).....................................passim

Cucuzzella v. Keliikoa,
    638 F.2d 105 (9th Cir. 1981).........................19, 20

Eain v. Wilkes, ,
    641 F.2d 504 (7th Cir. 1981),
    cert. denied, 454 U.S. 894 (1981).......................13

El Al Israel Airlines, Ltd. v. Tseng,
    525 U.S. 155 (1999).....................................16

Enami v. U.S. District Ct. for N. District Cal.,
    834 F.2d 1444 (9th Cir 1987)..............................9

In re Extradition of Kraiselburd,
    786 F.2d 1395 (9th Cir. 1986)............................7

In re Extradition of Mainero,
    990 F. Supp. 1208 (S.D. Cal. 1997).......................8

Matter of Extradition of McMullen,
    989 F.2d 603 (2d Cir. 1993)..............................7

In re Extradition of Tuttle,
    966 F.2d 1316 (9th Cir. 1992)...........................18

Factor v. Laubenheimer,
    290 U.S. 276 (1933).................................15, 16

Fernandez v. Phillips,
    268 U.S. 311 (1925).............................16, 17,21

Gerstein v. Pugh,
    420 U.S. 103 (1975).....................................20

Glucksman v. Henkel,
    221 U.S. 508 (1911)..................................8, 12

Greci v. Birknes,
    527 F.2d 956 (1st Cir. 1976).............................7

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

Grin v. Shine,
      187 U.S. 181 (1902)...............................16, 17,20

Hooker v. Klein,
      573 F.2d 1360 (9th Cir. 1978).......................11, 12

Jhirad v. Ferrandina,
      536 F.2d 478 (2d Cir. 1976),
      cert. denied, 429 U.S. 833 (1976)........................6

In re Kaine,
      55 U.S. 103 (1852)......................................13

In re Extradition of Robertson,
      2012 WL 5199152 (E.D. Cal. Oct. 19, 2012)............22, 23

Kelly v. Griffin,
      241 U.S. 6 (1916).......................................19

Lo Duca v. United States,
      93 F.3d 1100 (2d Cir. 1996).............................15

Magisano v. Locke,
      545 F.2d 1228 (9th Cir. 1976)............................7

Mainero v. Gregg,
      164 F.3d 1199 (9th Cir. 1999)...........................10

Martin v. Warden, Atlanta Penitentiary,
      993 F.2d 824 (11th Cir. 1993).......................passim

McElvy v. Civiletti,
      523 F. Supp. 42 (S.D. Fla. 1981)....................16, 20

Melia v. United States,
      667 F.2d 300 (2d Cir. 1981)..............................7

Messina v. United States,
      728 F.2d 77 (2d Cir. 1984)...............................7

Mirchandani v. United States,
      836 F.2d 1123 (9th Cir. 1988)...........................20

Neely v. Henkel,
      180 U.S. 109 (1901)......................................6

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

<u>Ntakirutimana v. Reno</u>,
        184 F.3d 419 (5th Cir. 1999)...............................13

<u>O'Brien v. Rozman</u>,
        554 F.2d 780 (6th Cir. 1977)................................8

<u>Oen Yin-Choy v. Robinson</u>,
        858 F.2d 1400 (9th Cir. 1988).........................7, 19

<u>Ordinola v. Hackman</u>,
        478 F.3d 588 (4th Cir. 2007),
        <u>cert. denied</u>, 128 S.Ct. 373 (2007).......................13

<u>Pettit v. Walshe</u>,
        194 U.S. 205 (1904).......................................17

<u>Prassoprat v. Benov</u>,
        421 F.3d 1009 (9th Cir. 2005).............................17

<u>Quinn v. Robinson</u>,
        783 F.2d 776 (9th Cir. 1986)..............................14

<u>Rice v. Ames</u>,
        180 U.S. 371 (1901)........................................8

<u>Sabatier v. Dabrowski</u>,
        586 F.2d 866 (1st Cir. 1978)...............................7

<u>Shapiro v. Ferrandina</u>,
        478 F.2d 894 (2d Cir. 1973)..........................passim

<u>Sidali v. I.N.S.</u>,
        107 F.3d 191 (3d Cir. 1997),
        <u>cert. denied</u>, 522 U.S. 1089 (1998).................13, 21

<u>Matter of Sindona</u>,
        450 F. Supp. 672 (S.D.N.Y. 1978), <u>aff'd sub nom.</u>, <u>Sindona</u>
        <u>v. Grant</u>, 619 F.2d 167 (2d Cir. 1980)................11, 14

<u>Skaftouros v. United States</u>,
        667 F.3d 144 (2d Cir. 2011)...............................23

<u>In re Solis</u>,
        402 F. Supp. 2d 1128 (C.D. Cal. 2005).....................11

1

**TABLE OF AUTHORITIES (CONTINUED)**

2

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

3

<u>Spatola v. United States</u>,
4            925 F.2d 615 (2d Cir. 1991)...............................21

5

<u>Sumitomo Shoji America, Inc. v. Avagliano</u>,
             457 U.S. 176 (1982)......................................16
6

<u>Then v. Melendez</u>,
7            92 F.3d 851 (9th Cir. 1996)..............................18

8

<u>United States ex rel. Bloomfield v. Gengler</u>,
9            507 F.2d 925 (2d Cir. 1974)..............................12

10

<u>United States ex rel Sakaguchi v. Kaulukukui</u>,
             520 F.2d 726 (9th Cir. 1975).............................16
11

<u>United States v. Burke</u>,
12           694 F.3d 1062 (9th Cir. 2012)............................24

13

<u>United States v. Foster</u>,
14           754 F.3d 1186 (10th Cir. 2014)...........................24

15

<u>United States v. Jones</u>,
             569 F.2d 499 (9th Cir. 1978).............................24
16

<u>United States v. Keller</u>,
17           912 F.2d 1058 (9th Cir. 1990)............................24

18

<u>United States v. Lui Kin-Hong</u>,
19           110 F.3d 103 (1st Cir. 1997).............................14

20

<u>United States v. Winn</u>,
             57 F.3d 1078 (9th Cir. 1995).............................24
21

<u>Yapp v. Reno</u>,
22           26 F.3d 1562 (11th Cir. 1994).............................7

23

<u>Yordi v. Nolte</u>,
24           215 U.S. 227 (1909).......................................9

25

<u>Zanazanian v. United States</u>,
26           729 F.2d 624 (9th Cir. 1984)..............................9

27

28

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                    PAGE

**FEDERAL STATUTES**

18 U.S.C. §§ 751(a)......................................24, 25

18 U.S.C. § 3184.........................................passim

18 U.S.C. § 3190.............................................8

**FEDERAL RULES**

Fed. R. Evid. 1101(d)(3).....................................6

Fed. R. Crim. Pro. 1(a)(5)...................................6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2
**I.    INTRODUCTION**

3
    On October 1, 2015, fugitive KENNETH WAYNE FROUDE ("FROUDE" or

4
the "fugitive") was arrested in this district on a complaint for an

5
arrest warrant and extradition under 18 U.S.C. § 3184 ("Section

6
3184") signed on September 23, 2015, by United States Magistrate

7
Judge Jacqueline Chooljian.  The complaint and arrest warrant were

8
sought by the United States at the request of the Government of

9
Canada pursuant to the Extradition Treaty Between the United States

10
of America and Canada ("the Treaty").[1]  <u>See</u> 27 U.S.T. 983, TIAS 8237.

11
At FROUDE's initial appearance on October 1, 2015, United States

12
Magistrate Judge Michael R. Wilner ordered FROUDE detained pending a

13
hearing under Section 3184 and the Treaty.  In this matter, the

14
United States acts on behalf of the Canadian government in accordance

15
with United States' treaty obligations.

16
    Canada has submitted a formal request for FROUDE's extradition

17
and surrender, supported by appropriate documents, to the United

18
States Department of State.  As required by statute, this Court has

19
scheduled a hearing for April 11, 2016, at 9:30 a.m., to consider the

20
evidence of criminality presented by Canada and to determine whether

21
such evidence is "sufficient to sustain the charge under the

22
provisions of the proper treaty or convention."  18 U.S.C. § 3184.

23
If the Court finds the evidence sufficient, it must "certify the

24

25

26

---

27
    [1] A copy of the Treaty was filed, along with the formal
extradition paperwork, concurrently with the complaint.  <u>See</u> 15-MJ-

28
1770-DUTY, Dkt. No. 1, later consolidated into 15-CV-08623-JLS-E.

1  same" to the Secretary of State, who will then decide whether to

2  surrender the fugitive "according to the treaty."[2]  Id.

3      Because an extradition hearing is neither a criminal nor a civil

4  proceeding, but is sui generis, the government offers this memorandum

5  both setting out the legal principles that guide the hearing to be

6  held pursuant to Section 3184, and analyzing how the facts presented

7  establish that this Court should certify FROUDE's extradition to the

8  Secretary of State.

9  **II.  STATEMENT OF FACTS**

10      Canada seeks FROUDE's extradition on two separate bases: 1) to

11  serve the remainder of his sentence, namely, 3,409 days pursuant to a

12  Long Term Supervision Order ("LTSO") imposed on May 16, 2008;[3] and

13  2) to stand trial for three charges of failing to comply with the

14  LTSO.[4] Canada seeks FROUDE's extradition based upon the following

15  facts which are supported by the declarations of Lisa Manson,

16  National Manager, Sentence Management for the CSC, and Karen Shai,

17

18

19

20  _____

21      [2] After the Court has completed its "limited inquiry, the
    Secretary of State conducts an independent review of the case to

22  determine whether to issue a warrant of surrender."  Martin v.
    Warden, Atlanta Penitentiary, 993 F.2d 824, 829 (11th Cir. 1993).

23      [3] A Warrant of Apprehension, Suspension and Recommitment to
    custody of Long Term Supervision was issued for FROUDE on May 18,

24  2013, following his escape from the custody of the Correctional
    Service of Canada ("CSC").

25      [4] On April 29, 2015, an information filed in the Ontario,
    Canada, Court of Justice, charged FROUDE with failing to: 1) reside

26  at a community correctional center or facility approved by the CSC;
    2) remain in Canada or within the territorial boundaries fixed by his

27  Parole Supervisor; and 3) "obey the law and keep the peace" as
    ordered in the LTSO.  Each charge is an alleged violation of Section

28  753.3(1) of the Canadian Criminal Code.

1    Barrister and Solicitor, Counsel in the Crown Law Office – Criminal,

2    Ministry of the Attorney General for the Province of Ontario.[5]

3    **A.   FROUDE Has Failed to Serve the Entirety of His Sentence**

4         On March 9, 2006, in the Superior Court of Justice in London,

5    Ontario, Canada, FROUDE was convicted by a Superior Court Justice,

6    sitting with a jury, of one count of breaking and entering with the

7    intent to commit a sexual assault (in violation of Section 341(b) of

8    the Canadian Criminal Code), one count of sexual assault with a

9    weapon (in violation of Section 272(2) of the Canadian Criminal

10   Code), and one count of uttering threats to cause bodily harm (in

11   violation of Section 264.1(2) of the Canadian Criminal Code) in

12   relation to conduct FROUDE committed in 2004.  On May 5, 2008,

13   Justice Rady of the Superior Court of Justice declared FROUDE a

14   "Long-Term Offender."  A Canadian judge will designate an individual

15   to be a Long-Term Offender if the judge is satisfied that: 1) it

16   would be appropriate to impose a sentence of imprisonment of two

17   years or more for the offense(s) for which the offender has been

18   convicted; 2) there is a substantial risk that the offender will

19   reoffend; and 3) there is a reasonable possibility of eventual

20   control of the risk in the community.

21        On May 16, 2008, Justice Rady sentenced FROUDE to ten years'

22   imprisonment for the three offenses of conviction,[6] and also imposed

23   a ten-year LTSO.  FROUDE was released from prison on November 12,

24   2010, and became subject to the LTSO upon his release.  FROUDE was

25        [5] The declarations of Mses. Manson and Shai were previously
26   filed with this Court on September 23, 2015, and again on November 4,
     2015.

27        [6] Judge Rady calculated the prison term by sentencing FROUDE to
     30 months' imprisonment, plus 1,344 days spent in pre-trial custody,
28   credited at a ratio of two-to-one.

supposed to begin serving his ten-year supervisory sentence that day. However, on November 10, 2010, FROUDE failed to report to the community correctional center at which the CSC had ordered him to live.  Instead, FROUDE hired a taxi and went into downtown Kingston, Ontario, Canada.  FROUDE was eventually captured, and On March 25, 2011, FROUDE was convicted of two counts of Failing or Refusing to Comply with the LTSO and one count of Engaging In Threatening Conduct, and was sentenced to 19 months' imprisonment.  FROUDE was released from prison on April 12, 2012.  On April 13, 2012, FROUDE's whereabouts again became unknown and a Warrant of Apprehension, Suspension and Recommitment to Custody was issued.  FROUDE was eventually located in the United States and, on July 19, 2012, the United States returned FROUDE to Canada where he served additional time in prison.  On January 28, 2013, FROUDE resumed his service of the LTSO at the Portsmouth Community Correctional Center, in Kingston, Ontario, Canada.

On the morning of May 18, 2013, FROUDE absconded from the community correctional center where he was serving the remainder of his sentence, and a Warrant of Apprehension, Suspension and Recommitment to custody of Long Term Supervision was issued.  The warrant stated that FROUDE was an unmanageable risk to the community and suspended his release.  CSC now accuses FROUDE of not serving the entirety of the ten-year LTSO and seeks to enforce the remainder of the supervision order.  The LTSO does not expire until September 22, 2022.  FROUDE has 3,409 days remaining to serve on the LTSO.

**B.   FROUDE Has Failed to Comply With the Terms of the LTSO**

The LTSO requires FROUDE to abide by certain conditions, for example, to reside at a "Community Correctional Centre or a

4

Community-Based Residential Facility approved by CSC," to remain at all times in Canada within the territorial boundaries fixed by his Parole Supervisor; and to obey the law and keep the peace.

On Friday, May 17, 2013, Commissionaire Dan Laurie ("Laurie") was on duty at the Portsmouth Community Correctional Center where FROUDE was living pursuant to the LTSO.  At approximately 11:30 p.m., Laurie was checking the facility to make sure it was secure, and to account for the presence of all residents.  Laurie saw FROUDE between 11:30 p.m. and 11:45 p.m. in the kitchen of FROUDE's unit.  At 12:00 a.m. all exterior doors of the center were locked and alarmed, and remained so until 6:00 a.m. Saturday, May 18, 2013.

Between 12:00 a.m. and 6:00 a.m. on Saturday, May 18, 2013, Laurie and Commissionaire Rodger Corcoran ("Corcoran") conducted four "bed checks" to ensure each resident was accounted for in his room. It appeared to Laurie and Corcoran that FROUDE was asleep in his bed in Unit 8, Room C.  However, on May 18, 2013, at approximately 11:30 a.m., Parole Officer Sandi Desjardins received an anonymous text message from a resident stating that FROUDE had left the center the previous night.  Upon receipt of this information, Commissionaire Robert Arter ("Arter") looked for FROUDE in FROUDE's room.  Arter looked through the small window in the door and knocked.  There was no response.  Arter unlocked the door, and walked over to the bed. Arter saw that a comforter and a shirt had been used to make it appear that FROUDE was asleep in the bed.  Most of FROUDE's belongings were gone, including his television and stereo.  Arter checked the rest of the unit, but could not find FROUDE.  Arter then checked the entire facility and surrounding property, but FROUDE could not be located.  On or about October 1, 2015, United States

1    Marshals arrested FROUDE in the United States, in Glendale,

2    California, within the Central District of California.

3    **III.  PROCEDURAL OVERVIEW**

4         **A.    An Extradition Hearing Follows Procedures Distinct From**

5                **Criminal Proceedings**

6         The extradition hearing prescribed by Section 3184 is unique.

7    <u>See, e.g.</u>, <u>Martin</u>, 993 F.2d at 828; <u>Jhirad v. Ferrandina</u>, 536 F.2d

8    478, 482 (2d Cir. 1976) (extradition is sui generis), <u>cert. denied</u>,

9    429 U.S. 833 (1976).  As described in <u>Jhirad</u>, an extradition hearing

10   has a structure and process defined by statute and treaty.  <u>Id.</u>

11   Thus, it is expressly not a criminal proceeding; its purpose is to

12   decide the sufficiency of the charge under the treaty, not guilt or

13   lack thereof.  <u>Neely v. Henkel</u>, 180 U.S. 109, 123 (1901).  The

14   limited nature of the hearing has resulted in special procedural and

15   evidentiary rules.  For example, the person whose extradition is

16   sought is not entitled to the rights available in a criminal trial.

17   <u>Neely</u>, 180 U.S. at 122 (rights available to one charged with criminal

18   offense in this country not applicable to offenses committed outside

19   the United States against the laws of another country); <u>accord</u>

20   <u>Charlton v. Kelly</u>, 229 U.S. 447, 461 (1913); <u>Martin</u>, 993 F.2d at 829.

21   The purpose of an extradition hearing under Section 3184 is not to

22   try the underlying charge; that is for the foreign court.  <u>Neely</u>, 180

23   U.S. at 123.

24        The Federal Rules of Criminal Procedure do not apply to

25   extradition proceedings.  <u>See</u> Fed. R. Crim. Pro. 1(a)(5) ("These

26   rules are not applicable to extradition and rendition of

27   fugitives.").  The Federal Rules of Evidence are also inapplicable.

28   <u>See</u> Fed. R. Evid. 1101(d)(3) ("The rules (other than with respect to

                                      6

privileges) do not apply . . . [to p]roceedings for extradition or rendition."); <u>see also</u> <u>Melia v. United States</u>, 667 F.2d 300 (2d Cir. 1981); <u>Greci v. Birknes</u>, 527 F.2d 956 (1st Cir. 1976).

Moreover, a fugitive has no right to discovery. <u>Messina v. United States</u>, 728 F.2d 77, 80 (2d Cir. 1984). "Discovery in an international extradition hearing is limited and lies within the discretion of the magistrate." <u>In re Extradition of Kraiselburd</u>, 786 F.2d 1395 1399 (9th Cir. 1986); <u>cf.</u> <u>Oen Yin-Choy</u>, 858 F.2d at 1407 ("Although there is no explicit statutory basis for ordering discovery in extradition proceedings, the extradition court has the inherent power to order such discovery procedure as law and justice require.").

Further, a fugitive's constitutional rights are limited.  The fugitive has no right to cross-examine witnesses who might testify at the hearing.  <u>Oen Yin-Choy</u>, 858 F.2d at 1407.  There is no Sixth Amendment right to a speedy trial.  <u>Yapp v. Reno</u>, 26 F.3d 1562, 1565 (11th Cir. 1994); <u>Martin</u>, 993 F.2d at 829; <u>Sabatier v. Dabrowski</u>, 586 F.2d 866, 869 (1st Cir. 1978).  The Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings. <u>Collins v. Loisel</u>, 262 U.S. 426, 429 (1923); <u>Matter of Extradition of McMullen</u>, 989 F.2d 603, 612-613 (2d Cir. 1993).  Absent egregious government misconduct, the Fourth Amendment and the exclusionary rule are not applicable.  <u>Magisano v. Locke</u>, 545 F.2d 1228, 1230 (9th Cir. 1976) (argument as to alleged illegalities in wiretapping were not revlevant).  Finally, the fugitive does not have the right to confront his accusers.  <u>Bingham v. Bradley</u>, 241 U.S. 511, 517 (1916).

1    **B.   Extradition Hearings Rely on Written Submissions and Do Not**
2    **Require Live Witnesses**

3    A certification of extradition may be based entirely on the
4    authenticated documentary evidence and information provided by the
5    requesting government.  See, e.g., Bovio v. United States, 989 F.2d
6    255, 259-261 (7th Cir. 1993) (Swedish investigator's statement
7    sufficient to establish probable cause); O'Brien v. Rozman, 554 F.2d
8    780, 783 (6th Cir. 1977); Shapiro, 478 F.2d at 902-903; In re
9    Extradition of Mainero, 990 F. Supp. 1208, 1212-1213 (S.D. Cal. 1997)
10   (statements of co-conspirators and other witnesses sufficient in
11   extradition to Mexico for murder).  A certification may also be based
12   upon written statements by the foreign prosecutor or judge
13   summarizing the evidence.  See Rice v. Ames, 180 U.S. 371, 375-376
14   (1901); accord Glucksman v. Henkel, 221 U.S. 508, 513-514 (1911).

15   Section 3184 and the applicable treaty govern both the nature of
16   and the admissibility of the evidence at an extradition hearing.  In
17   this case, Articles 9 and 10 of the Treaty list the documentary
18   submissions required from the Government of Canada.  Specifically, 18
19   U.S.C. Section 3190 provides that "properly and legally
20   authenticated" documentary evidence including "depositions, warrants,
21   or other papers or copies thereof shall be admitted."  See Barapind
22   v. Enomoto, 360 F.3d 1061, 1069 (9th Cir. 2004); see also Collins,
23   259 U.S. at 313.  Proof that the authentication is proper and legal
24   exists if the documents are accompanied by the certification of an
25   appropriate United States diplomatic or consular officer in the
26   requesting country attesting that the documents would be admissible
27   for similar purposes in that country.  See 18 U.S.C. § 3190.  (The
28   documents filed in this case are accompanied by the appropriate

8

1  certification from Bruce A. Heyman, of the United States Embassy in

2  Ottawa, Canada.)

3       Extradition treaties do not require or even anticipate the

4  testimony of live witnesses at the hearing because to do so "would

5  defeat the whole object of the treaty." Yordi v. Nolte, 215 U.S.

6  227, 231 (1909); see also Bingham, 241 U.S. at 517; Afanasjev v.

7  Hurlburt, 418 F.3d 1159, 1163-1165 (11th Cir. 2005), cert. denied,

8  546 U.S. 993 (2005); Artukovic v. Rison, 784 F.2d 1354, 1356 (9th

9  Cir. 1986); Shapiro, 478 F.2d at 902.  Hearsay evidence is admissible

10 at extradition hearings, and may fully support a court's findings

11 leading to a certification under Section 3184.  Collins, 259 U.S. at

12 317; Enami v. U.S. Dist. Ct. for N. Dist. Cal., 834 F.2d 1444, 1450-

13 53 (9th Cir 1987).

14      In Bingham, the Supreme Court rejected the respondent's claim

15 that ex parte witness affidavits submitted in support of his

16 extradition to Canada should not be considered because he had not had

17 the opportunity to cross-examine those witnesses.  The Court referred

18 to the applicable treaty language, which obligated the United States

19 to extradite "upon such evidence of criminality as, according to the

20 laws of the place where the fugitive or person so charged shall be

21 found, would justify his apprehension and commitment for trial, if

22 the crime or offense had there been committed." Bingham, 241 U.S. at

23 517.  As Section 3190 does today, its predecessor, applicable in

24 Bingham, provided for the admissibility at the extradition hearing of

25 depositions, warrants and similar documents upon proper certification

26 by the U.S. diplomatic or consular officer.  This principle of

27 extradition law is even more firmly-rooted today than it was in 1916

28 when the Supreme Court decided Bingham.  See Zanazanian v. United

9

1  States, 729 F.2d 624, 626-627 (9th Cir. 1984) (applying Bingham in

2  extradition to Sweden); Shapiro, 478 F.2d at 902 (obviating necessity

3  of confronting accused with witnesses against him is "one of the

4  prime objects of bi-lateral extradition agreements.  Even the advent

5  of modern transportation and communication has not changed this

6  firmly-rooted posture of the U.S. courts.").

7       **C.   A Fugitive's Ability to Challenge Evidence is Limited**

8       Due to the nature and limited purpose of an extradition hearing

9  under Section 3184, and the importance of the international

10  obligations of the United States under an extradition treaty, a

11  fugitive's opportunity to challenge the evidence introduced against

12  him is exceedingly circumscribed.  A fugitive may not introduce

13  evidence that contradicts the evidence submitted on behalf of the

14  requesting country, but may introduce evidence explaining the

15  submitted evidence.  "Generally, evidence that explains away or

16  completely obliterates probable cause is the only evidence admissible

17  at an extradition hearing, whereas evidence that merely controverts

18  the existence of probable cause, or raises a defense, is not

19  admissible."  Barapind, 400 F.3d at 749 (quoting Mainero v. Gregg,

20  164 F.3d 1199, 1207, n.7 (9th Cir. 1999)).  As the Supreme Court has

21  explained:

22          If this were recognized as the legal right of the accused
            in extradition proceedings, it would give him the option of
23          insisting upon a full hearing and trial of his case here;
            and that might compel the demanding government to produce
24          all its evidence here, both direct and rebutting, in order
            to meet the defense thus gathered from every quarter.  The
25          result would be that the foreign government though entitled
            by the terms of the treaty to the extradition of the
26          accused for the purpose of a trial where the crime was
            committed, would be compelled to go into a full trial on
27          the merits in a foreign country, under all the
            disadvantages of such a situation, and could not obtain
28          extradition until after it had procured a conviction of the

                                    10

accused upon a full and substantial trial here.  This would
be in plain contravention of the intent and meaning of the
extradition treaties.

Collins v. Loisel, 259 U.S. 309, 316 (1922); accord Charleton, 229
U.S. at 461.

The extent to which the fugitive may offer explanatory proof is
largely within the discretion of the committing judicial officer.
Hooker v. Klein, 573 F.2d 1360, 1369 (9th Cir. 1978).  The category
of what constitutes explanatory evidence, however, is small in light
of the limited purpose of the hearing, i.e., to determine the
sufficiency of the evidence to sustain the charge, and the
overarching goal of the proceeding, which is to effectuate the
purposes of the treaty.  An extradition hearing necessarily excludes
evidence that requires the court to make determinations outside of
the scope of the hearing or within the province of the ultimate trier
of fact, particularly when those determinations rest on foreign law.
Such evidence exceeds the limits of "explanatory" or "obliterating"
evidence and is not properly before the court.  See In re Solis, 402
F. Supp. 2d 1128, 1132 (C.D. Cal. 2005).

The distinction between "contradictory evidence" and
"explanatory evidence" is difficult to articulate.
However, the purpose behind the rule is reasonably clear.
In admitting "explanatory evidence," the intention is to
afford an accused person the opportunity to present
reasonably clear-cut proof which would be of limited scope
and having some reasonable chance of negating a showing of
probable cause.  The scope of this evidence is restricted
to what is appropriate to an extradition hearing.  The
decisions are emphatic that the extraditee cannot be
allowed to turn the extradition hearing into a full trial
on the merits.

Matter of Sindona, 450 F. Supp. 672, 685 (S.D.N.Y. 1978), aff'd sub
nom., Sindona v. Grant, 619 F.2d 167 (2d Cir. 1980).

11

1
2

    **D.   An Extradition Hearing Excludes Technical and Affirmative Defenses**

3
4
5
6
7
8
9
10

    A court should reject defenses against extradition that "savor of technicality," as they are peculiarly inappropriate in dealings with a foreign nation.  See Glucksman, 221 U.S. at 513-514; accord Bingham, 241 U.S. at 517; United States ex rel. Bloomfield v. Gengler, 507 F.2d 925, 927-1024 (2d Cir. 1974); Shapiro, 478 F.2d at 904.  For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender.  See id.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

    It is also well settled that affirmative defenses to the merits of the charge are not to be entertained in extradition hearings.  See Charlton, 229 U.S. at 462; Hooker, 573 F.2d at 1368.  A fugitive may not introduce evidence that merely conflicts with the evidence submitted on behalf of the demanding state, attempts to establish an alibi, suggests an insanity defense, or seeks to impeach the credibility of the demanding country's witnesses.  See Collins, 259 U.S. at 315-317 (conflicting evidence not admitted); Charlton, 229 U.S. at 462 (insanity defense not permitted); Shapiro, 478 F.2d at 901 (alibi defense not permitted); Hooker, 573 F.2d at 1368 (stating that "the extraditing court properly may exclude evidence of alibi, of facts contradicting the government's proof, or of a defense such as insanity"); Bovio, 989 F.2d at 259 (attack on witness credibility not allowed).  Such issues, which require factual and credibility determinations, are for the court in the requesting country to resolve at a trial of the charges.  See id.

27
28

1
2

### E.   Considering Matters Other Than Sufficiency of the Evidence is the Exclusive Province of the Executive Branch

3   Other than the sufficiency of the evidence, all matters that may
4   be raised by the fugitive as defenses to extradition are to be
5   considered by the Secretary of State, not by the court.  See 18
6   U.S.C. §§ 3184, 3186.  In making extradition determinations, "[t]he
7   Secretary exercises broad discretion and may properly consider
8   factors affecting both the individual defendant as well as foreign
9   relations - factors that may be beyond the scope of the magistrate
10  judge's review."  Sidali v. I.N.S., 107 F.3d 191, 195 n.7 (3d Cir.
11  1997), cert. denied, 522 U.S. 1089 (1998).  The Secretary of State
12  takes into account, for example, humanitarian claims and applicable
13  statutes, treaties, or policies regarding appropriate treatment in
14  the receiving country.  See Ntakirutimana v. Reno, 184 F.3d 419, 430
15  (5th Cir. 1999).  This segregation of duties is consistent with the
16  long-held understanding that surrender of a fugitive to a foreign
17  government is "purely a national act . . . performed through the
18  Secretary of State," within the Executive's "powers to conduct
19  foreign affairs."  See In re Kaine, 55 U.S. 103, 110 (1852).
20  Therefore, under this constitutionally-based rule of judicial
21  non-inquiry, a fugitive's contention that the extradition request is
22  politically motivated or that the justice system of the requesting
23  state is unfair should be addressed by the Secretary of State.  It is
24  not the role of the court to look behind the extradition request to
25  the motives of the requesting country.  Ordinola v. Hackman, 478 F.3d
26  588, 604 (4th Cir. 2007), cert. denied, 128 S.Ct. 373 (2007) ("the
27  motives of the requesting government are irrelevant to our decision"
28  and "must be addressed to the Secretary of State"); Eain v. Wilkes,

641 F.2d 504, 513 (7th Cir. 1981) (sole discretion of Secretary of State to determine whether foreign country's request for extradition is a subterfuge), cert. denied, 454 U.S. 894 (1981).  Likewise, the court should not investigate the fairness of the requesting country's criminal justice system.  United States v. Lui Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997); see also Blaxland v. Commonwealth Director, 323 F.3d 1198, 1208 (9th Cir. 2003).

Similarly, the Secretary of State has sole discretion under Section 3186 and the relevant treaty to determine whether a request for extradition should be denied on humanitarian grounds because of procedures or treatment awaiting the surrendered fugitive.  See Quinn v. Robinson, 783 F.2d 776, 790-791 (9th Cir. 1986); Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir. 1990) ("[T]he degree of risk to [the accused's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch." (quoting Sindona, 619 F.2d at 174)).

Further, a fugitive's contention that he will be tried in the extraditing country for crimes other than those for which extradition will be granted must be rejected as beyond the responsibility of the court, for the United States government does not presume that the demanding government will seek a trial in violation of a treaty. Bingham, 241 U.S. at 514.

IV.  **ARGUMENT AND ANALYSIS**

A.  **The Role of the Judge Presiding Over Extradition Proceedings is Well-Defined**

As noted above, extradition is primarily an executive responsibility with a specially defined role for a judicial officer, who is authorized by statute to determine whether to certify to the

14

1   Secretary of State that the submitted evidence is "sufficient to
2   sustain the charge."  18 U.S.C. § 3184.  The Secretary of State then
3   makes the final decision whether a fugitive should be surrendered to
4   the requesting country.  See 18 U.S.C. §§ 3184, 3186; Martin v.
5   Warden, Atlanta Penitentiary, 993 F.2d 824, 828 (11th Cir. 1993); Lo
6   Duca v. United States, 93 F.3d 1100, 1110 n.10 (2d Cir. 1996).

7       At the extradition hearing, a court should consider the evidence
8   presented on behalf of the requesting country and determine whether
9   the legal requirements for certification, as defined in the treaty,
10  statutes and case law, have been established.  If any explanatory
11  evidence is offered by the fugitive, the court should rule on its
12  admissibility.  Once the evidentiary record is complete, the court
13  should then make written findings of fact and conclusions of law as
14  to each of the elements for certification, including separate
15  findings for each offense as to which extradition is sought.  Shapiro
16  v. Ferrandina, 478 F.2d 894 (2d Cir. 1973).  If the court certifies
17  the evidence to the Secretary of State, the court must commit the
18  fugitive to the custody of the United States Marshal to await further
19  determination by the Secretary of State regarding surrender to
20  representatives of the requesting state.  The court provides its
21  certification to the Secretary of State together with a copy of the
22  evidence and a transcript of any testimony presented at the hearing.
23  18 U.S.C. § 3184; see Barapind v. Reno, 225 F.3d 1100, 1105 (9th Cir.
24  2000).

25      In fulfilling its function under Section 3184, the judicial
26  officer should liberally construe the applicable extradition treaty
27  in order to effect its purpose, namely, the surrender of fugitives to
28  the requesting country.  Factor v. Laubenheimer, 290 U.S. 276, 301

1   (1933); <u>United States ex rel Sakaguchi v. Kaulukukui</u>, 520 F.2d 726,

2   731 (9th Cir. 1975).   In applying this rule:

> [A] narrow and restricted construction is to be avoided as
> not consonant with the principles deemed controlling in the
> interpretation of international agreements.   Considerations
> which should govern the diplomatic relations between
> nations, and the good faith of treaties, as well, require
> that their obligations should be liberally construed so as
> to effect the apparent intentions of the parties to secure
> equality and reciprocity between them.

8   <u>McElvy v. Civiletti</u>, 523 F. Supp. 42, 47 (S.D. Fla. 1981) (quoting

9   <u>Factor</u>, 290 U.S. at 287) (citations omitted).   Indeed, in order to

10  carry out a treaty obligation, the treaty "should be construed more

11  liberally than a criminal statute or the technical requirements of

12  criminal procedure."   <u>Factor</u>, 290 U.S. at 298.   Further, treaty

13  countries do not expect foreign governments to be versed in one

14  another's criminal laws and procedures.   <u>Grin v. Shine</u>, 187 U.S. 181,

15  184 (1902).   Thus, in extradition proceedings, "[f]orm is not to be

16  insisted upon beyond the requirements of safety and justice."

17  <u>Fernandez v. Phillips</u>, 268 U.S. 311, 312 (1925).   Statements by the

18  United States Department of State as to interpretation of treaties

19  should be given great weight by the court.   <u>El Al Israel Airlines,</u>

20  <u>Ltd. v. Tseng</u>, 525 U.S. 155, 168 (1999);   <u>Sumitomo Shoji America,</u>

21  <u>Inc. v. Avagliano</u>, 457 U.S. 176, 184-185 (1982) ("Although not

22  conclusive, the meaning attributed to treaty provisions by the

23  Government agencies charged with their negotiation and enforcement is

24  entitled to great weight.").

25       **B.   The Legal Requirements for Certification are Well-Settled**

26       An extradition certification is in order when: 1) the judicial

27  officer is authorized to conduct the extradition proceeding; 2) the

28  court has jurisdiction over the fugitive; 3) the applicable treaty is

1  in full force and effect; 4) the crime(s) for which surrender is

2  requested are covered by the applicable treaty; and 5) there is

3  sufficient evidence to support a finding of probable cause as to each

4  charge for which extradition is sought.  <u>Fernandez</u>, 268 U.S. at 312;

5  <u>Prassoprat v. Benov</u>, 421 F.3d 1009, 1013 (9th Cir. 2005) (discussing

6  scope of hearing, which is to determine whether crime is both

7  extraditable and supported by probable cause).  Here, none of the

8  five requirements for certification of extradition can seriously be

9  contested.

10        1.   <u>This Court Has Authority Over These Proceedings</u>

11        The extradition statute authorizes proceedings to be conducted

12  by "any justice or judge of the United States, or any magistrate

13  judge authorized so to do by a court of the United States, or any

14  judge of a court of record of general jurisdiction of any State."

15  <u>See</u> 18 U.S.C. § 3184.  Consequently, either a magistrate judge or a

16  district judge may render a certification under Section 3184.  <u>See</u>

17  <u>Austin v. Healey</u>, 5 F.3d 598, 601-602 (2d Cir. 1993) (magistrate

18  judge had authorization to conduct the extradition hearing without

19  specific delegation of authority).

20        2.   <u>This Court Has Jurisdiction Over the Fugitive</u>

21        FROUDE was arrested in Gardena, California, within the Central

22  District of California, and a court has jurisdiction over a fugitive

23  found within its jurisdictional boundaries.  <u>See</u> 18 U.S.C. § 3184

24  (court "may, upon complaint made under oath, charging any person

25  found within his jurisdiction, . . . issue [its] warrant for the

26  apprehension of the person so charged").  <u>See also</u> <u>Pettit v. Walshe</u>,

27  194 U.S. 205, 219 (1904); <u>Grin</u>, 187 U.S. at 181.

28

3.   <u>The Extradition Treaty Between the United States and</u>
<u>Canada is in Full Force and Effect</u>

The United States has provided a declaration from Anna Cavnar,
an attorney in the Office of the Legal Adviser for the Department of
State, attesting that there is a treaty in full force and effect
between the United States and Canada.   The Department of State's
determination is entitled to deference from this Court.   <u>Then v.</u>
<u>Melendez</u>, 92 F.3d 851, 854 (9th Cir. 1996) (since continuing validity
of treaty presents a political question, the judiciary must defer to
the intentions of the Executive); <u>see also</u> <u>In re Extradition of</u>
<u>Tuttle</u>, 966 F.2d 1316, 1317 (9th Cir. 1992).   The extradition
statute, Section 3184, provides for extradition in instances in which
a treaty or convention is in force between the requesting state and
the United States.   <u>See, e.g.</u>, <u>In re Chan Kam-Shu</u>, 477 F.2d 333 (5th
Cir. 1973).

4.   <u>FROUDE's Crimes are Covered by the Treaty</u>

Extradition treaties create an obligation for the United States
to surrender fugitives under the circumstances defined in the treaty.
Article 2 of the Treaty, as replaced by Article 1 of the 1998
Protocol, provides for the return of fugitives charged with or
convicted of an "extraditable offense" as that term is defined under
the Treaty.   The documents submitted by Canada, and previously filed
before this Court, establish that FROUDE has been convicted of
multiple sexual offenses and charged with three counts of failing to
comply with a LTSO, in violation of Section 753.3(1) of the Canadian
Criminal Code.   Therefore, FROUDE's extradition is sought both to
serve the remainder of his Canadian sentence and to stand trial on
three new charges arising out of his violation of the LTSO.

Article 2 of the Treaty defines offenses as extraditable if the criminal conduct is punished under the laws of both the United States and Canada by a deprivation of liberty for a maximum of at least one year or more or by a more severe penalty.  Consequently, this Court should examine the description of the criminal conduct provided by Canada in support of its charges and decide whether that conduct would be criminal under United States law, if committed in this country.  A requesting country is neither obliged to produce evidence addressing each element of a criminal offense, nor to establish that its crimes are identical to ours.  Kelly v. Griffin, 241 U.S. 6, 15 (1916).  Dual criminality is not a technical concept involving a comparison of elements of the two countries' offenses:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries.  It is enough if the particular act charged is criminal in both jurisdictions.

Collins v. Loisel, 259 U.S. 309, 312 (1922); Clarey v. Gregg, 138 F.3d 764, 765-66 (9th Cir. 1998) (Although simple homicide in Mexico differs from felony murder in the United States, the category of conduct is similar and satisfies the dual criminality requirement); Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1407 (9th Cir. 1988) (crimes not identical, but Hong Kong crimes of false accounting and publishing a false statement are substantially analogous to United States crime of making a false entry in a bank statement); Cucuzzella v. Keliikoa, 638 F.2d 105, 108 (9th Cir. 1981) (Canadian "breach of trust statute analogous to federal embezzlement statues" so dual criminality satisfied).

1    Dual criminality is established if the conduct involved in the

2  foreign offense would be criminal under either United States federal

3  law, the law of the state in which the hearing is held, or the law of

4  a preponderance of the states.  <u>Cucuzzella</u>, 638 F.2d at 107-108.  The

5  court should "approach challenges to extradition with a view toward

6  finding the offense within the treaty," <u>McElvy</u>, 523 F. Supp. at 48,

7  "because extradition treaties should be interpreted with a view to

8  fulfil our just obligations to other powers." <u>Grin</u>, 187 U.S. at 184.

9  Foreign governments should not be expected to be versed in our

10 criminal laws and procedures.  <u>Id.</u> at 184-185.

11           5.    <u>The Evidence Establishes Probable Cause to Believe</u>

12                 <u>that FROUDE has Failed to Serve the Entirety of His</u>

13                 <u>Sentence</u>

14    The standard of proof to find the evidence "sufficient to

15 sustain the charge . . ." pursuant to Section 3184 is the familiar

16 domestic requirement of probable cause.  The court must conclude

17 there is probable cause to believe that the crime charged by Canada

18 was committed and the person before the court committed it.

19 <u>Mirchandani v. United States</u>, 836 F.2d 1123, 1226 (9th Cir. 1988)

20 (probable case standard applicable in extradition proceeding is

21 whether any evidence exists warranting a finding that there was a

22 reasonable ground to believe the accused is guilty).  The evidence is

23 sufficient, and probable cause is established, if a person of

24 ordinary prudence and caution can conscientiously entertain a

25 reasonable belief in the probable guilt of the accused.  <u>Gerstein v.</u>

26 <u>Pugh</u>, 420 U.S. 103, 111 (1975). As the Supreme Court explained long

27 ago:

28

> [T]he proceeding before the commissioner is not to be
> regarded as in the nature of a final trial by which the
> prisoner could be convicted or acquitted of the crime
> charged against him, but rather of the character of those
> preliminary examinations which take place every day in this
> country before an examining or committing magistrate for
> the purpose of determining whether a case is made out which
> will justify the holding of the accused, either by
> imprisonment or under bail, to ultimately answer to an
> indictment, or other proceeding, in which he shall be
> finally tried upon the charge made against him.

Benson v. McMahon, 127 U.S. 457, 463 (1888); See also Collins, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); Fernandez v. Phillips, 268 U.S. 311, 312 (1925); accord Barapind v. Enomoto, 400 F.3d 744, 752 (9th Cir. 2005).

In the case of a conviction, this Court's determination that there is probable cause may be based solely upon the existence of a judgment of conviction in the requesting country.  See Spatola v. United States, 925 F.2d 615, 618 (2d Cir. 1991) (where "there has been a judgment of conviction [entered by a foreign court], there is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which a fortiori establishes probable cause"); Sidali v. I.N.S., 107 F.3d 191, 196 (3d Cir. 1997) (a foreign conviction obtained after a trial at which the accused is present is sufficient to support a finding of probable cause for the purposes of extradition).

Here, the certified Canadian conviction records and other documentary evidence submitted conclusively establish that FROUDE was convicted of one count of breaking and entering with the intent to commit a sexual assault (in violation of Section 341(b) of the

1    Canadian Criminal Code), one count of sexual assault with a weapon

2    (in violation of Section 272(2) of the Canadian Criminal Code), and

3    one count of uttering threats to cause bodily harm (in violation of

4    Section 264.1(2) of the Canadian Criminal Code).  Similarly, the

5    certified Court records plainly show that, on May 16, 2008, Justice

6    Rady sentenced FROUDE to ten years imprisonment and ten years of

7    supervision pursuant to an LTSO.  FROUDE's LTSO does not expire until

8    September 22, 2022.  FROUDE has 3,409 days remaining to serve on his

9    LTSO.  Accordingly, this Court should certify to the Secretary of

10   State that FROUDE may be extradited to serve the remainder of his

11   sentence.  See In re Extradition of Robertson, 2012 WL 5199152, *11

12   (E.D. Cal. Oct. 19, 2012) (ordering extradition of fugitive to serve

13   remainder of long term supervision imposed under Canadian law).

14              6.   The Evidence Establishes Probable Cause to Believe

15                   that FROUDE Has Violated the Terms of His LTSO

16        Similarly, the documentary information that Canadian authorities

17   have submitted conclusively establishes both that FROUDE is subject

18   to an LTSO, and that the LTSO to which FROUDE was subject required

19   him to: 1) reside at a community correctional center or other

20   facility approved by the CSC; 2) remain in Canada; and 3) "obey the

21   law and keep the peace."  The Canadian government has submitted the

22   regulations setting forth the requirements of the LTSO generally, and

23   has also shown that the conditions FROUDE is alleged to have violated

24   were incorporated into the LTSO itself.  Further, the affidavits

25   detailing FROUDE's alleged escape from the community correctional

26   center in which he had been ordered to live, and that FROUDE was

27   arrested here in the Central District of California, are sufficient

28   to establish probable cause to believe that FROUDE has failed to

                                    22

abide by the conditions of the LTSO.  Accordingly, this Court should certify FROUDE's extradition to the Secretary of State.

**C.   Dual Criminality is Satisfied With Respect to Both Grounds Upon Which Extradition is Sought**

First, there is no reasonable argument that failure to serve a judicially-pronounced sentence, without leave of court, is a crime in the United States.  There is also no viable argument that the LTSO is not a part of FROUDE's sentence.  Section 753.1 of the Canadian Criminal Code provides that upon finding an offender to be a long term offender, the Court shall "impose a sentence for the offense for which the offender has been convicted" and "order the offender to be supervised in the community of a period not exceeding ten years."  Section 753.1, on its face, provides that a sentence for a long term offender includes both a term of imprisonment and a term of supervision.  Furthermore, this Court should not become mired in the technicalities of the Canadian criminal process, because to do so would offend the principles of international comity and judicial modesty mandating the narrow scope of review in extradition proceedings.  See, e.g., In re Extradition of Robertson, 2012 WL 5199152, at *10-11 (quoting Skaftouros v. United States, 667 F.3d 144, 156 (2d Cir. 2011)).  It is the province of Canadian courts to determine whether an LTSO forms a part of an offender's sentence under Canadian law.  This Court, therefore, should find that probable cause exists to believe FROUDE has failed to serve his entire sentence under the LTSO.

Next, dual criminality is satisfied regarding the fact that FROUDE escaped from a community correctional facility because, in the United States, an escape from an institution or facility in which a

23

1    person is confined by direction of the Attorney General is a felony

2    punishable by up to five years' imprisonment.  See 18 U.S.C.

3    §§ 751(a), 4082(d).  The Ninth Circuit has held that federal

4    prisoners participating in halfway house programs by designation of

5    the Attorney General commit the offense of escape when they willfully

6    violate terms of their extended confinement.  See, e.g., United

7    States v. Keller, 912 F.2d 1058, 1060-61 (9th Cir. 1990) (failure to

8    report to a community residential center constitutes an escape);

9    United States v. Jones, 569 F.2d 499, 500 (9th Cir. 1978) (same);

10   United States v. Winn, 57 F.3d 1078, 1078-79 (9th Cir. 1995).  Other

11   circuits hold the same view.  See, e.g., United States v. Foster, 754

12   F.3d 1186, 1191 (10th Cir. 2014) (failure to return to a residential

13   re-entry house violated § 751(a)).

14       In this regard, the Ninth Circuit's decision in United States v.

15   Burke, 694 F.3d 1062 (9th Cir. 2012), is inapposite because

16   supervised release in the United States is not analogous to a

17   Canadian LTSO.  In Burke, the Ninth Circuit held that a defendant who

18   violated the terms of his court-ordered supervised release was not

19   "in custody" under § 751(a) because he had already completed his

20   prison term and was no longer in the custody of the Bureau of Prisons

21   at the time of the violation.  Id. at 1064.  However, as discussed in

22   the documents submitted by Canada, the CSC is the agency charged with

23   both administering prison terms of two years or more, and overseeing

24   the supervision of offenders subject to an LTSO.  Further, it is the

25   CSC that now seeks to enforce the remainder of FROUDE's LTSO, and

26   accuses FROUDE of failing to comply with the terms of the LTSO.

27   FROUDE's escape from the community correctional center in Portsmouth

28   was, therefore, an escape from the CSC's custody, and is the legal

24

equivalent of an escape from the custody of the Attorney General under 18 U.S.C. § 751. Accordingly, there is dual criminality for each ground upon which Canada requests FROUDE's extradition.

**V. CONCLUSION**

For the foregoing reasons, the United States respectfully requests, on behalf of the government of Canada, that this Court certify the extradition of the fugitive to the Secretary of State for surrender to the Canadian government.