HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
(E-mail: Hilary_Potashner@fd.org)
MARISOL ORIHUELA (Bar No. 261375)
(E-Mail: Marisol_Orihuela@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2644
Facsimile: (213) 894-0081

Attorneys for Defendant
KENNETH WAYNE FROUDE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>KENNETH WAYNE FROUDE,<br>Defendant. | NO. CV 15-8623-JLS-E<br><br>**KENNETH WAYNE FROUDE'S OPPOSITION TO GOVERNMENT'S REQUEST FOR EXTRADITION** |

Kenneth Wayne Froude, by and through his attorney of record, Deputy Federal Public Defender Marisol Orihuela, hereby submits this opposition to the United States government's Memorandum in Support of Extradition (Dkt. 19).

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: March 21, 2016

By */s/ Marisol Orihuela*
MARISOL ORIHUELA
Deputy Federal Public Defender

## I.INTRODUCTION

This extradition requests presents a solely legal issue: whether the government has set forth a basis of extradition that is permitted by the Treaty between Canada and the United States. It has not. Because the Treaty does not permit Mr. Froude's extradition on the bases sought, this Court must deny the request.

## II.STATEMENT OF FACTS

Mr. Froude was convicted of criminal offenses in Canada and sentenced in 2008 to serve 30 months for these offenses. He completed that sentence in 2010. At the time that he was sentenced, he was also ordered to serve a term of supervision. The terms of the supervision were not imposed until after Mr. Froude completed his sentence in 2010. Then, the Correctional Service of Canada issued the conditions of a long-term supervision order ("LTSO").

Mr. Froude violated the terms of his LTSO and was subject to additional prosecution in Canada. He was sentenced to another term of imprisonment, which he completed. He then was subject, again, to a LTSO. During the term of his supervision, he left Canada and entered the United States, residing in the Southern California area without any criminal arrests or convictions until the instant matter. Now, the government seeks his extradition to Canada based on his alleged violations of his LTSO, and because, according to the government, not completing his LTSO is tantamount to not completing his sentence.

## III. STANDARD OF REVIEW

This Court's authority to certify extradition is governed by both statute and treaty. *Factor v. Laubenheimer*, 290 U.S. 276, 287 (1933) ("[N]o branch of the United States government has any authority to surrender an accused to a foreign government except as provided for by statute or treaty."). A magistrate judge must, pursuant to 18 U.S.C. § 3184, determine whether "the evidence is sufficient to sustain the charge under the provision of the proper treaty or convention." In accordance with the Extradition Treaty Between the United States of America and Canada ("the Treaty"),

this Court may grant the extradition request only if the evidence is found sufficient, under the laws of the United States, to justify the committal.

In an extradition proceeding, the government bears the burden of establishing extraditability: the government must show, among other things, the existence of a treaty providing for extradition for the charged offense for which the warrant was issued. *Petition of France for Extradition of Sauvage*, 819 F. Supp. 896, 897 (S.D. Cal. 1993). Furthermore, the treaty requires that the allegations meet the "dual criminality" provision. Article 2 of the 1971 Extradition Treaty provides that "Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment." As set out in *In re Extradition of Platko*,

> the determination of extraditability requires that the doctrine of "dual criminality" be satisfied. The charged conduct must be illegal in both the requesting and the requested nations. . . . Dual criminality is "an essential element of the government's burden of proof to establish a basis for extradition." . . . . The court need not find identical criminal statutes defining an offense, only conduct that would be a crime in both jurisdictions.

213 F.Supp.2d 1229, 1236 (S.D.Cal. 2002) (citations omitted); *see also In re Extradition of Lukes*, 02-MC-23-FTM, 2003 WL 23892681, at *3 (M.D.Fla. May 8, 2003) (noting that dual criminality "is in effect a reciprocity requirement which is intended to ensure each of the respective states that they (and the relator) can rely on corresponding treatment, and no state shall use its processes to surrender a person for the conduct which it does not characterize as criminal).

## IV. DISCUSSION

### A. Mr. Froude Cannot be Extradited To Serve a Sentence When He Has Already Completed His Sentence

Mr. Froude's sentence was pronounced on May 15, 2008. He was sentenced to ten years imprisonment, but, after being given credit for the time spent in pre-trial custody, the resulting sentence for his conviction was 30 months. The government concedes that Mr. Froude completed the 30-month sentence imposed by the sentencing court. The government seeks to extradite Mr. Froude because of an order of supervision, but the government cannot prove that the LTSO is an unexpired "sentence" under the Treaty or Canadian law that permits the extradition of Mr. Froude.

#### 1. The Documents Underlying the Extradition Request Prove that Mr. Froude Has Completed His Sentence

The Treaty requires, in cases where the individual whose extradition is sought has already been convicted, that the extradition request "be accompanied by the judgment of conviction and sentence passed against him in the territory of the requesting State." *See* Article 9(4) of the Treaty. The Treaty does not provide for extradition of supervision orders expressly. For that reason, extradition in this case -- for the alleged failure to complete a supervision order ("LTSO"), is only permitted under the Treaty if it is part of the "sentence" imposed in the judgment of conviction.

The judgment in this case is found at Exhibit A to Affidavit of Lisa Munson, and a review of the document indicates that the "sentence" imposed on Mr. Froude was 30 months imprisonment, and that the "sentence" imposed does not include the LTSO. The first two pages, titled "Warrant of Committal on Conviction" for the "Superior Court of Justice" list the sentences imposed on each of the three offenses of which Mr. Froude, references the thirty months imposed on each of those counts (after credit for pre-trial custody), and make no reference whatsoever to the LTSO. The third page, which is also titled "Warrant of Committal on Conviction" again lists the sentence as 30 months. Separately, in handwriting, contains a reference to Mr. Froude being found

to be a long-term offender. Although a hand-written notation notes "10 years," the document does not state that the sentence includes a term of long-term supervision of 10 years, and the notations are not listed underneath the pronounced sentence of 30 months. *See* Exhibit A to Affidavit of Lisa Munson.[1] In other words, thee judgment fails to indicate that the "sentence" includes a term of supervision. Indeed, the references to the sentence imposed all refer to 30 months, and there is no dispute that Mr. Froude completed his 30-month sentence in 2010.

The remaining documents submitted by the government in support of the extradition request confirm that his "sentence" is the term of imprisonment imposed only. The affidavit of Karen Shai treats his sentence and the term of supervision as separate when discussing the requirements for an individual to be subject to an LTSO. *See* Affidavit of Karen Shai at ¶ 15. The process for determining whether or not Mr. Froude would be subject to an LTSO occurred independently from his sentencing. Mr. Froude was found to be subject to an LTSO for being a long-term offender on May 5, 2008, over a week before his sentence was determined. *See id*. at ¶27; Exh. G to Affidavit of Karen Shai. The determination of whether an individual should be subject to an LTSO references the *sentence* that will be imposed as a condition precedent to the finding of being a long-term offender. *See* Section 753.1(1) to Canadian Criminal Code, Exh. A to Affidavit of Karen Shai (requiring for imposition of an LTSO that, inter alia, a "sentence of two years or more" would be appropriate)); *see also* Exh. G to Affidavit of Karen Shai.[2] The transcript of Mr. Froude's sentencing on May 16, 2008 discusses the term of supervision initially, and then proceeds to "turn[] to [the] sentence," s*ee* Exh. H to Affidavit of Karen Shai, suggesting that the sentence is the

---

[1] The Warrant of Committal on Conviction that followed Mr. Froude's violations of his LTSO in 2010 do not even reference the LTSO at all. *See* Exh. C to Affidavit of Lisa Munson.

[2] Ms. Shai herself differentiates between a term of LTSO and a sentence, referring to Ms. Froude being "subject to his LTSO" "[u]pon completion of his sentence." *See* Declaration of Karen Shai at ¶33.

term of imprisonment. Based on the documentation submitted to this Court, the "sentence" imposed on Mr. Froude is a term of imprisonment of 30 months. That sentence has already expired.

The documents relating to the conditions of Mr. Froude's long-term supervision also indicate that the LTSO is not part of the sentence imposed. The conditions of his supervision were apparently not imposed until he completed his sentence in 2010. *See* Exh. B to Affidavit of Lisa Munson (certificate of Long Term Supervision imposing conditions). Further, the warrant of apprehension in this extradition does not seek the arrest of Mr. Froude for failure to serve a sentence. *See* Exh. E to Affidavit of Karen Shai.

The government cannot show that the terms of the treaty have been complied with because the Treaty does not provide for extradition for an LTSO that has not been completed. The Treaty provides for the extradition of individuals whose "sentences" have not been completed, but in this case that cannot be satisfied. The sentence imposed in this case was 30 months, and Mr. Froude completed that sentence in November 2010.

**2. Canadian Law Confirms that a Sentence Does Not Include an LTSO**

Should this Court have any doubt as to whether a "sentence" under the Treaty includes an LTSO, it should look to Canadian law for guidance on that issue. Because Canadian law provides that a sentence and an LTSO are separate and one is not part of the other, the Court should conclude that a "sentence" does not include an LTSO, and deny the government's request for extradition based on a claim of an unexpired sentence.

The statutory framework for imposition of an LTSO treats the imposition of supervision for long-term offenders independently from the sentence imposed upon conviction of an offense. Section 753.1 of the Canadian Criminal Code provides for separate orders, one for a sentence -- which corresponds to a term of imprisonment, and

one for a term of supervision. *See* Section 753.1(3), Exh. A to Affidavit of Karen Shai. Further, Section 753.2(1) of the Canadian Criminal Code provides long-term supervision for an individual found to be a long-term offender begins after "the sentence for the offense for which the offender has been convicted" is completed. *See* Section 753.2(1).[3] The statutory definitions of "sentence" also fail to include supervision orders such as the LTSO. The Canadian Corrections and Conditional Release Act defines "sentence" as "a sentence of imprisonment and includes a sentence imposed by a foreign entity . . and a youth sentence."[4] *See* CCCRA §2(1). The Canadian Criminal Code's definition of "sentence" also fails to include an LTSO. *See* CCC §673 (defining "sentence" for purpose of appeals).

Canadian caselaw confirm that this process is separate, while it happens "concurrent with the sentencing process." *McMurray v. National Parole Board*, 2004 FC 462, ¶ 6 (Fed. Ct. of Canada 2004) (noting that an individual was made subject to long-term supervision concurrently with sentencing).[5] In addressing the jurisdiction of the courts over terms of long-term supervision, the Federal Court of Canada expressly noted that "[l]ong-term supervision does not form part of the offender's sentence." *Id.* at ¶ 25. The Supreme Court of Canada has also discussed the distinction between a sentence imposed for an offense and supervision orders. *See R. v. L.M.*, 2008 SCC 31, ¶ 38 (Sup. Ct. Canada 2008).[6] In its discussion, the Supreme Court of Canada held that there exists a "distinction . . . between sentencing *per se* and the procedure for imposing a period of post-sentence supervision." *Id.* As discussed by the Supreme Court of

---

[3] available at: http://laws-lois.justice.gc.ca/eng/acts/C-46/page-196.html#docCont.

[4] available at: http://laws-lois.justice.gc.ca/eng/acts/C-44.6/page-1.html#h-2.

[5] available at: http://www.canlii.org/en/ca/fct/doc/2004/2004fc462/2004fc462.html?resultIndex=1.

[6] available at: http://www.canlii.org/en/ca/scc/doc/2008/2008scc31/2008scc31.html?autocompleteStr=R.%20v.%20L.M.&autocompletePos=1.

Canada, the supervision process is an administrative one, while the sentencing process is a judicial one. For that reason, the Supreme Court of Canada cautioned that judges should "remain faithful to the distinction between sentencing and the imposition of a supervision period. A judge who confuses these two processes "risks straying from the normative principles and the objectives of sentencing." *Id.* at ¶ 49.

Because Canadian law confirms that an LTSO is not part of the "sentence" imposed on Mr. Froude, and Mr. Froude has completed his sentence of 30 months, the government cannot extradite Mr. Froude to serve an unexpired sentence in Canada.

**B. The Alleged Violations of Mr. Froude's LTSO Cannot Form the Basis of Extradition Because They Are Not Crimes in the United States**

The government's second ground for seeking extradition is the claim that Mr. Froude has violated the terms of his LTSO. The government offers evidence to show that those violations are crimes carrying a potential term of imprisonment of one year or more, but it has failed to show that by analogy that the conduct would constitute a felony in the United States. For this reason, the government has failed to satisfy the dual criminality provision of the Treaty, and extradition must be denied.

The government's argument, that the conduct alleged against Mr. Froude is analogous to "escape" under 18 U.S.C. § 751, is simply unavailing. An escape under § 751 is possible only when one is a prisoner – that is, subject to a custodial sentence. The extension of § 751 to residential facilities, or "half-way houses," is permitted because individuals subject to a custodial sentence serve part of that sentence at residential facilities. That is the purpose of 18 U.S.C. §4082(d). Here, there is no dispute that Mr. Froude has completed his custodial sentence and any requirement to reside in a residential facility was a condition of supervision, not in lieu of imprisonment.

Controlling Ninth Circuit law instructs that Mr. Froude's alleged conduct does not satisfy the element of "custody" for a violation of § 751, because Mr. Froude's condition to reside at a residential facility was not in lieu of his incarceration at a

prison. In *United States v. Keller*, 912 F.2d 1058 (9th Cir. 1990), the defendant had been ordered – as a sentence pursuant to a probation revocation – to report to a community residential center. In other words, it was not a condition of probation that he reside at the residential center that constituted an escape for purposes of § 751, the operative fact was that a "sentence of imprisonment" had been imposed after his probation was revoked, *see* 912 F.2d at 1059, and he had failed to comply with that sentence. Once his probation had been revoked and a sentence of imprisonment imposed, the sentencing court had "committed" the defendant to the custody of the Attorney General. *Id.* at 1060. That "commitment" was a necessary aspect violating § 751. Likewise, the Ninth Circuit has held that an individual commits an "escape" in violation of § 751 when he leaves a facility to which he has been designated to reside at pursuant to a pronounced sentence of imprisonment. *See United States v. Jones*, 569 F.2d 499 (9th Cir. 1978) ("After . . . commitment to prison, [defendant] was released to a contract "half-way house" . . . . "); *United States v. Winn*, 57 F.3d 1078 (9th Cir. 1995) ( unpublished) (holding that defendant who was subject to confinement after being returned to custody pursuant to probation revocation committed an escape when he left a residential facility).

The government is incorrect in arguing that *United States v. Burke* is not authoritative on this issue. 694 F.3d 1062 (9th Cir. 2012). In that case, the Ninth Circuit held that where a prison term had been completed, and a defendant was residing at a residential facility as a condition of supervised release, a defendant was not in "custody" for purposes of § 751. *Id.*at 1064. The Ninth Circuit noted that the defendant "was not serving a prison sentence, nor was he confined to [the residential facility] under conditions equivalent to custodial incarceration." *Id.* The same is true here. Mr. Froude was not serving a prison sentence when the allegations occurred. *Burke* controls this issue, and pursuant to *Burke*, this Court should determine that the allegations against Mr. Froude do not constitute a felony in the United States.

Arguably, *United States v. Foster*, 754 F.3d 1186, 1191 (10th Cir. 2014), lends some support to the government's argument that violating a supervision order that includes a residence requirement could constitute an escape under § 751. However, an important distinction in *Foster* and this instant matter is that the residence requirement in *Foster* was imposed by the sentencing court. Here, the terms of Mr. Froude's LTSO were all imposed by the Parole Board *after* he completed his sentence. Thus, there does not appear to be a "commitment" to custody as required by § 751. Second, the Tenth and Ninth Circuits have conflicting views on what constitutes "custody" for purposes of §751. In the Ninth Circuit, residing at a residential facility while awaiting trial does not satisfy the "custody" requirement of Section 751, *see United States v. Baxley*, 982 F.2d 1265 (9th Cir. 1992) while in the Tenth Circuit it does, *see United States v. Sack*, 379 F.3d 1177 (10th Cir. 2014). *Baxley* and *Burke* stand for the proposition that, in order to violate § 751, an individual must be subject to a term of incarceration (even if that term is being carried out at a residential facility). The Tenth Circuit has no such requirement, and notably, in *Foster*, the Tenth Circuit relied on its earlier ruling that a pre-trial detainee could violate §751, which is impossible in the Ninth Circuit. For these reasons, even if the Court finds any support in *Foster* for the government's argument, it cannot follow it to the extent *Foster* is in conflict with the Ninth Circuit.

**V.CONCLUSION**

For the reasons set forth above, the request for extradition must be denied.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: March 21, 2016

By */s/ Marisol Orihuela*
MARISOL ORIHUELA
Deputy Federal Public Defender