EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
NATHANIEL B. WALKER (Cal. Bar No. 224473)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0282
    Facsimile: (213) 894-0141
    E-mail:    nathaniel.walker@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>KENNETH WAYNE FROUDE,<br><br>A Fugitive from the Government of Canada. | No. CV 15-8623-JLS-E<br><br>GOVERNMENT'S REPLY MEMORANDUM IN SUPPORT OF EXTRADITION<br><br>Hearing Date: April 11, 2016<br>Hearing Time: 9:30 a.m.<br>Location:   Courtroom of the Hon. Charles F. Eick |

    On behalf of the government of Canada, complainant United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United

//

//

1  States Attorney Nathaniel B. Walker, hereby submits its reply

2  memorandum in support of extradition in the above-captioned matter.

3  Dated: April 4, 2016              Respectfully submitted,

4                                    EILEEN M. DECKER
                                     United States Attorney
5
                                     LAWRENCE S. MIDDLETON
6                                    Assistant United States Attorney
                                     Chief, Criminal Division
7

8                                          /s/
                                     _____
                                     NATHANIEL B. WALKER
9                                    Assistant United States Attorney

10                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The United States filed its memorandum in support of extradition on March 14, 2016. The fugitive, KENNETH WAYNE FROUDE ("FROUDE") filed his opposition on March 21, 2016, arguing that his Long Term Supervision Order ("LTSO") is not part of his Canadian criminal sentence, and that the evidence presented on behalf of Canada does not meet the dual-criminality requirement of the Extradition Treaty Between the United States of America and Canada ("the Treaty"). See 27 U.S.T. 983, TIAS 8237. As argued below, each contention is without merit, and this Court should certify FROUDE's extradition to the Secretary of State.

## II. THIS COURT SHOULD NOT ENGAGE IN A TECHNICAL ANALYSIS OF CANADIAN CRIMINAL LAW

The only task before this Court is to consider whether the evidence presented on behalf of Canada establishes probable cause to believe that FROUDE committed the acts related by the record, and that Canadian law is as represented in the record. See Mirchandani v. United States, 836 F.2d 1123, 1226 (9th Cir. 1988) (probable cause standard applicable in extradition proceeding is whether any evidence exists warranting a finding that there was a reasonable ground to believe the accused is guilty). Accordingly, this Court should not become mired in the technicalities of the Canadian criminal process, because to do so would offend the principles of international comity and judicial modesty mandating the narrow scope of review in extradition proceedings. See, e.g., In re Extradition of Robertson, 2012 WL 5199152, at *10-11 (quoting Skaftouros v. United States, 667 F.3d 144, 156 (2d Cir. 2011)). Here, the evidence establishes

probable cause to believe that FROUDE: 1) was convicted of certain offenses[1] in Canada; 2) has failed to serve his entire sentence;[2] and 3) is prosecutable for additional offenses. Therefore, the evidence presented is more than sufficient for this Court to certify FROUDE's extradition to the Secretary of State.

### III. EVEN IF IT WERE APPROPRIATE FOR THIS COURT TO SETTLE A QUESTION OF CANADIAN LAW, THE RECORD ESTABLISHES THAT FROUDE'S LTSO IS PART OF HIS SENTENCE

Froude is a sex offender who has already been convicted of multiple counts of sexual assault. The court in Ontario found Froude to be a Long-Term Offender ("LTO"), and therefore subject to an LTSO upon completion of his period of incarceration. As explained in Exhibit A hereto (Crown Prosecutor's Supplementary Affidavit), a sentence for a LTO includes both a term of imprisonment and an order of supervision. Canadian Criminal Code Section 753.1(1) provides that if "the court finds an offender to be a long-term offender, it

---

[1] In the case of a conviction, this Court's determination that there is probable cause may be based solely upon the existence of a judgment of conviction in the requesting country. See Spatola v. United States, 925 F.2d 615, 618 (2d Cir. 1991) (where "there has been a judgment of conviction [entered by a foreign court], there is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which a fortiori establishes probable cause"); Sidali v. I.N.S., 107 F.3d 191, 196 (3d Cir. 1997) (a foreign conviction obtained after a trial at which the accused is present is sufficient to support a finding of probable cause for the purposes of extradition).

[2] The supporting documentation submitted plainly shows that, on May 16, 2008, Justice Rady sentenced FROUDE to ten years imprisonment and ten years of supervision pursuant to an LTSO, that FROUDE's LTSO does not expire until September 22, 2022, and that FROUDE has 3,409 days remaining to serve on his LTSO. Accordingly, this Court should certify to the Secretary of State that FROUDE may be extradited to serve the remainder of his sentence. See In re Extradition of Robertson, 2012 WL 5199152, *11 (E.D. Cal. Oct. 19, 2012) (ordering extradition of fugitive to serve remainder of long term supervision imposed under Canadian law).

2

shall (a) impose a sentence for the offence for which the offender has been convicted . . . and (b) order the offender to be supervised in the community, for a period not exceeding ten years." In this regard, Section 753.1 is "mandatory and conjunctive," which means that once an offender is found to be an LTO, "he or she must be subject to a term of imprisonment and a LTSO." See Exhibit A ¶ 8 ("A sentence imposed on a designated Long-Term Offender without the imposition of a LTSO would be unlawful."). The Crown prosecutor also cites case law from the Supreme Court of Canada explaining that Section 753.1 allows sentencing judges, instead of imposing an indeterminate term of imprisonment, to "consider the additional possibility that a determinate sentence followed by a period of supervision in the community might adequately protect the public." Id. at ¶ 9 (citing R. v. Johnson [2003] 2 S.C.R. 357 (Can.)). Here, the sentencing judge found that there was a substantial risk of re-offending based on FROUDE's multiple convictions for sexual assault. Based on the results of FROUDE's psychiatric evaluation, which concluded that FROUDE could benefit from treatment, the sentencing judge found that there was a reasonable possibility that FROUDE's risk to the community could be controlled. Accordingly, FROUDE was sentenced to both a term of imprisonment and a ten-year LTSO, instead of only a prison term of indeterminate length. Both the incarceration period and the LTSO, imposed at the same time, are part of FROUDE's sentence under Canadian law. Thus, to the extent that this Court believes it necessary to analyze the various parts of FROUDE's criminal sentence, the Crown prosecutor's supplemental affidavit establishes, at a minimum, probable cause to believe that FROUDE's LTSO was part of his sentence, and that the period of

1 | incarceration and supervision were part of one sentencing
2 | transaction.
3 |     FROUDE, who chose not to appeal either his designation as an LTO
4 | or the length of the LTSO in Canada, now wants to litigate these
5 | issues in the United States. FROUDE points to instances in the
6 | record where the word "sentence" is not used in reference to the
7 | LTSO. Froude's formulaic arguments unduly restrict the scope of the
8 | meaning of the word "sentence" to "term of imprisonment" only. These
9 | arguments are both legally incorrect, and overly technical. First,
10 | the meaning of the word "sentence," as it appears in the Treaty, is
11 | broad. Courts have rejected defenses against extradition that "savor
12 | of technicality" as they are inappropriate in dealings with foreign
13 | nations. Bingham v. Bradley, 241 U.S. 511, 517 (1916). "Technical
14 | objections to the demanding nation's compliance with its own law are
15 | particularly disfavored" in the extradition context. Skaftouros v.
16 | United States, 667 F.3d 144, 156 (2d Cir. 2011).
17 |     Furthermore, the same arguments FROUDE advances have recently
18 | been rejected by the Eastern District of California in In re
19 | Extradition of Robertson, 2012 WL 5199152 (E.D. Cal. 2012). There, a
20 | fugitive from Canada claimed that the LTSO, imposed as a result of
21 | his conviction for sexual assaults, was not part of his "sentence."
22 | After providing a detailed analysis of the arguments for both sides,
23 | the court found that the Government had met the requirements of the
24 | applicable treaty. The Robertson court properly declined "to make a
25 | determination regarding the law of Canada." Id. at *11. In this
26 | regard, the court relied upon the well-established principles of
27 | international comity and judicial modesty, which now foreclose
28 | FROUDE's first argument against extradition. See id.

4

## IV. Dual Criminality is Satisfied

FROUDE does not challenge probable cause with respect to his failure to comply with the LTSO, but contends that such failure would not constitute a felony in the United States because it is not substantially analogous to the felony escape offense defined in Title 18, United States Code, Sections 751(a) and 4082. FROUDE asks this Court to take an overly-restrictive view of dual criminality and the definition of "custody" under United States criminal law.

As a first principle, "extradition treaties, unlike criminal statutes, are to be construed liberally in favor of enforcement because they are 'in the interest of justice and friendly international relationships.'" United States v. Lui Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997) (citing Factor v. Laubenheimer, 290 U.S. 276, 295 (1933)).[3] Further, treaty countries do not expect foreign governments to be versed in one another's criminal laws and procedures. Grin v. Shine, 187 U.S. 181, 184 (1902). Thus, in extradition proceedings, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." Fernandez v. Phillips, 268 U.S. 311, 312 (1925). To the extent the Canadian and United States statutes are not a perfect match, the Court should construe them in favor of extradition because the "essential character of the transaction is the same, and made criminal" by the laws of both

---

[3] In fulfilling its function under Section 3184, the judicial officer should liberally construe the applicable extradition treaty in order to effect its purpose, namely, the surrender of fugitives to the requesting country. Factor v. Laubenheimer, 290 U.S. 276, 301 (1933); United States ex rel Sakaguchi v. Kaulukukui, 520 F.2d 726, 731 (9th Cir. 1975). Indeed, in order to carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." Factor, 290 U.S. at 298.

5

countries. Wright v. Henkel, 190 U.S. 40, 58 (1903). "The primary focus of dual criminality has always been on the conduct charged; the elements of the analogous offenses need not be identical." Emami v. U.S. Dist. Court, 834 F.2d 1444, 1450 (9th Cir. 1987).

Here, FROUDE's conduct falls squarely within the framework of Sections 751 and 4082. Section 751(a) defines "escape" as follows:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge . . . shall . . . be fined under this title or imprisoned not more than five years.

Section 4082(d) expands Section 751(a) by defining the term "facility" as including a "residential community treatment center." The record establishes that FROUDE was required to reside, pursuant to the LTSO and the Canadian regulations, at a "Community Correctional Centre or a Community-Based Residential Facility approved by CSC." The CSC is the Canadian agency charged with overseeing the administration of Froude's imprisonment and his compliance with the LTSO. In this regard, the CSC is equivalent to the U.S. Bureau of Prisons ("BOP"), which is charged with ensuring that federal offenders serve their sentences and providing "reentry programming to ensure their successful return into the community." See https://www.bop.gov/about/agency/. The fact that FROUDE had completed his term of incarceration when he escape from the community correctional center does not change the fact that the sentencing judge committed him to the CSC's custody for the duration of the LTSO, i.e., ten full years. FROUDE's conduct, therefore, if committed in the United States, would amount to both an escape "from

6

any institution or facility in which he was confined by direction of the Attorney General," and an escape from "any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge." See 18 U.S.C. § 751(a). Thus, the Treaty's dual criminality requirement is met because the Canadian charges of failure to comply with the LTSO are substantially analogous to the Escape offense defined by Sections 751(a) and 4082.

FROUDE attempts to distinguish controlling Ninth Circuit law by claiming that his commitment to the Portsmouth Community Correctional Center was analogous to non-custodial supervised release. FROUDE's opposition at 9. However, as argued above, because the LTSO is part of FROUDE's sentence, his commitment to the community correctional center was custodial, which is why the Ninth Circuit decisions FROUDE attempts to distinguish are controlling here. See United States v. Keller, 912 F.2d 1058, 1060-61 (9th Cir. 1990) (failure to report to a community residential center constitutes an escape); United States v. Jones, 569 F.2d 499, 500 (9th Cir. 1978) (same); United States v. Winn, 57 F.3d 1078, 1078-79 (9th Cir. 1995). FROUDE argues that, in Keller and Jones, the defendant's commitment to the halfway house in each of those matters was "custodial" only because defendant's parole was revoked. Neither Keller nor Jones, however, establishes a rule that parole revocation is a condition precedent to a finding that a halfway house commitment is "custodial." Indeed, not only was the halfway house commitment in Keller part of defendant's sentence, it was the only type of custody ordered, and the Ninth Circuit, in affirming the conviction, had no difficulty in rejecting the defendant's argument that he could not be prosecuted under Sections 751(a) and 4082 because he was never "in custody." Id. Thus, the

7

circuit's opinion in Keller only reinforces the well-established principle that commitment to a halfway house constitutes "custody," an escape from which amounts to a felony under United States law.[4]

FROUDE's reliance on Burke is also misplaced. FROUDE's opposition at 9 (citing United States v. Burke, 694 F.3d 1062, 1064 (9th Cir. 2012)). In Burke, a divided panel of the Ninth Circuit held that the defendant could not be tried for an escape under Section 751(a) because the requirement that defendant reside at a halfway house was a condition of his supervised release, analogous to probation, rather than part of his custodial sentence. 694 F.3d 1062, 1064-65. The more narrow definition of "custody" in Burke was based on the circuit's analysis of the factual circumstances of the defendant's supervised release. Id. Even viewed most favorably to FROUDE, Burke merely stands for the proposition that the restrictiveness of a defendant's placement at a halfway house is a factual question to be resolved on a case-by-case basis. In other words, there is no per se rule in the Ninth Circuit that residence at a halfway house does not constitute custody. Furthermore, the court in Burke found it "crucial" that the defendants in Keller and Jones were in BOP custody, while the defendant in Burke was not. 694 F.3d at 1065. Here, FROUDE, was committed to the CSC's custody for the duration of the LTSO and is now sought by the CSC to serve the remainder of his sentence. Accordingly, if anything, Burke suggests that the Ninth Circuit would place FROUDE's violation of the LTSO

---

[4] Similarly, in Jones, the Ninth Circuit held that a federal prisoner "participating in a pre-release or half-way house program by designation of the Attorney General commits an escape when he willfully violates the terms of his extended confinement." 569 F.2d at 500.

8

squarely within the escape statute as it did for the defendants in Keller and Jones. Therefore, the weight of authority from the Ninth Circuit, the sui generis nature of this proceeding, and the well-settled dual-criminality principles establish that FROUDE's violation of the LTSO is an extraditable offense substantially analogous to a felony escape under Sections 751(a) and 4082.

## V. CONCLUSION

For the foregoing reasons, the United States respectfully requests, on behalf of the government of Canada, that this Court certify the extradition of the fugitive to the Secretary of State for surrender to the Canadian government.