# EXHIBIT

# A

Embassy of the United States of America

Certificate to be Attached to Documentary Evidence Accompanying
Requisitions in the United States for Extradition

## AMERICAN FOREIGN SERVICE

Ottawa, Canada, March 31, 2016

I, Bruce A. Heyman, Ambassador of the United States of America at Ottawa, Canada, hereby certify that the annexed papers, being authenticated supporting documents proposed to be used upon an application for the extradition from the United States of KENNETH WAYNE FROUDE, who is wanted in the Province of Ontario to stand trial on three charges of failing to comply with the Long Term Supervision Order, contrary to the *Criminal Code* and to serve 3409 days remaining to be served on the said Long Term Supervision Order that accompanied a 7 year sentence imposed on one count of Break and Enter and Commit Sexual Assault, contrary to s. 348(1)(b) of the *Criminal Code*; one count of Utter a Threat to cause Bodily Harm, contrary to s. 264.1(2) of the *Criminal Code*; and one count of Sexual Assault Using a Weapon, contrary to s. 272(2) of the *Criminal Code*, are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Canada, as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed this 31st day of March, 2016.

_____
Bruce A. Heyman
Ambassador of the
United States of America

 Department of Justice  Ministère de la Justice
Canada  Canada

Ottawa, Canada
K1A 0H8

## CERTIFICATE OF AUTHENTICATION

*IN THE MATTER OF the extradition of KENNETH WAYNE FROUDE from the United States of America to Ontario, Canada*

I, CATHY CHALIFOUR, Counsel, International Assistance Group, Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated supplementary documentation presented by Canada in support of the extradition of KENNETH WAYNE FROUDE who is wanted in the Province of Ontario to stand trial on three charges of failing to comply with a Long Term Supervision Order, contrary to the *Criminal Code* and to serve 3409 days remaining to be served on the said Long Term Supervision Order that accompanied a 30 month sentence imposed on one count of Break and Enter and Commit Sexual Assault contrary to s. 348(1)(b) of the *Criminal Code*; one count of Utter a Threat to cause Bodily Harm, contrary to s. 264.1(2) of the *Criminal Code*; and one count of Sexual Assault Using a Weapon, contrary to s. 272(2) of the *Criminal Code*.

THAT the documentation attached to this certificate is composed of:

- the original Supplementary Affidavit of KAREN SHAI, Counsel in the Crown Law Office – Criminal, Ministry of the Attorney General for the Province of Ontario prepared on March 30, 2016.

THAT Gregory J. Tweney whose original signature appears at the end of the Affidavit of Karen Shai, is a Commissioner of Oaths for the Province of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

The Seal of the Minister of Justice of Canada is hereby affixed this 30th day of March, 2016.

_____
Cathy Chalifour

Canada

| | |
|---|---|
| CANADA<br>PROVINCE OF ONTARIO | IN THE MATTER OF a request for the extradition of Kenneth Wayne FROUDE from the United States to Canada to face prosecution for three counts of an offence contrary to the *Criminal Code of Canada* and to serve the remainder of a Long Term Supervision Order |

## SUPPLEMENTARY AFFIDAVIT OF KAREN SHAI

I, Karen Shai, of the City of Toronto, Province of Ontario, Canada, MAKE OATH AND SAY AS FOLLOWS:

### A. QUALIFICATIONS

1. I am a Barrister and Solicitor, qualified to practice law in the Province of Ontario, Canada, since March 1998. Since that time, I have been practicing law in the position of Counsel in the Crown Law Office – Criminal, Ministry of the Attorney General for the Province of Ontario.

2. As a result of my training and experience, I am knowledgeable in the criminal and sentencing laws of Canada.

3. This affidavit is sworn in reply to Mr. Froude's submission and should be read in conjunction with my previously sworn affidavit of law dated May 15, 2015.

4. I understand that that the Federal Defender for Kenneth Wayne FROUDE has filed a Brief in Opposition to Extradition (dated March 21, 2016), in which it is contended that a Long-Term Offender Supervision Order ("LTSO") under the *Criminal Code* of Canada does not constitute a "sentence" within the meaning of the Extradition Treaty Between Canada and the United States, March 22, 1976. Article 9(4) of the Extradition Treaty stipulates that "[w]hen the request [for extradition] relates to a person already convicted, it must be accompanied by the judgement of conviction and sentence passed against him in the territory of the requesting State, by a statement showing how

much of the sentence has not been served, and by evidence providing that the person requested is the person to whom the sentence refers."

### B. THE LTSO IS PART OF THE "SENTENCE" IMPOSED ON MR. FROUDE

5. In Canada, the federal government has legislative authority for criminal law. Canada's *Criminal Code*, R.S.C. 1985, c. C-46, is a statute duly enacted by the Parliament of Canada and applies across the country.

6. In Canada, once an individual has been designated a Long-Term Offender by a judge, sentence is imposed on that individual pursuant to s.753.1(3) of the *Criminal Code*. That section reads as follows:

> s.753.1(3): If the court finds an offender to be a long-term offender, it *shall*:
>
> (a) impose a sentence for the offence for which the offender has been convicted, which must be a minimum punishment of imprisonment for a term of two years; *and*
>
> (b) order that the offender be subject to long-term supervision for a period that does not exceed 10 years. [emphasis added]

7. Under s.753.2 (1) of the *Criminal Code*, relating to the supervision of long-term offenders, the provision reads as follows:

> s.753.2(1): Subject to subsection (2), an offender who is subject to long-term supervision shall be supervised in the community in accordance with the *Corrections and Conditional Release Act* when the offender has finished serving
>
> (a) the sentence for the offence for which the offender has been convicted; and
>
> (b) all other sentences for offences for which the offender is convicted and for which sentence of a term of imprisonment is imposed on the offender, either before or after the conviction for the offence referred to in paragraph (a).
>
> (2) A *sentence* imposed on an offender referred to in subsection (1), *other than a sentence that requires imprisonment,* is to be served concurrently with the long-term supervision. [emphasis added]

8. Section 753.1(3) is mandatory and conjunctive. In other words, once an offender is designated a Long-Term Offender, he or she *must* be subject to a term of imprisonment *and* a LTSO. In designating Mr. Froude a Long-Term Offender, Justice Rady properly imposed a sentence of imprisonment and determined, based upon the evidence before her, that a LTSO of maximum duration of 10 years was appropriate (see Exhibit H of my

affidavit dated May 15, 2015, p.1, lines 15-23). A sentence imposed on a designated Long-Term Offender *without* the imposition of a LTSO would be unlawful.

9. As a matter of law in Canada, the LTSO forms part of the sentencing for a designated Long-Term Offender. The leading case in Canada on the LTO/DO regime is *R. v. Johnson* [2003] 2 S.C.R. 357, in which the Supreme Court of Canada described the long-term offender provisions in Part XXIV of the *Criminal Code* (which include the provisions set out above), as provisions that "govern the *sentencing* of offenders who pose an ongoing public threat" (para. 2). According to the Supreme Court of Canada, the long-term offender provisions "[expand] the range of *sentencing options* available to a sentencing judge who is satisfied that the dangerous offender criteria have been met" (para. 44). With Canada's introduction of s.753.1, a

> sentencing judge is no longer faced with the stark choice between an indeterminate sentence and a determinate sentence. Rather, *a sentencing judge may consider the additional possibility that a determinate sentence followed by a period of supervision* in the community might adequately protect the public. (para. 44) [emphasis added]

10. Working together, the fixed term of imprisonment and the LTSO constitute a "sentencing option" under the DO/LTO regime.

### C. THE LTSO IN THIS MATTER WAS IMPOSED IN 2008

11. Mr. Froude's Opposition to this extradition request appears to be based, to a significant degree, on his assertion that the LTSO in this case was not "imposed" until *after* he completed his sentence in 2010 (see page 2, lines 8-12; page 10, lines 5-8 of Opposition). This assertion is incorrect. The LTSO in this case (as in every case where an individual has been declared a Long-Term Offender) was *imposed* by the Court on May 16, 2008, when Mr. Froude was sentenced as a Long-Term Offender (See Exhibit H of my affidavit dated May 15, 2015, p.1, lines 15-23; see also Exhibit J of my affidavit dated May 15, 2015, page 3, line 23-page 4, line 10).

12. Indeed, in the Information (i.e. the charging document) which charges Mr. Froude with the criminal charges that are the subject matter of this extradition request, Mr. Froude is charged with three criminal offences of failing to comply with a LTSO that was "made by the Ontario Superior Court of Justice on May 16[th], 2008, for a period of ten years....." (see Exhibit D of my affidavit dated May 15, 2015).

4

13. In providing her Reasons for Sentence on May 16, 2008, Justice Rady expressly imposed a LTSO as follows:

> The outstanding issues today are the appropriate sentence for Mr. Froude and the length of the supervision order made pursuant to the long term offender designation.
>
> In respect of the latter, I agree with the Crown's submission, that given the nature of this offence and the nature of this offender, Mr. Froude's prior convictions for sexual assault and other sexual improprieties and Dr. Hucker's opinion, it is appropriate that Mr. Froude be supervised for a period of 10 years.
>
> *Exhibit H of my affidavit dated May 15, 2015, page 1, lines 5-22*

14. Further, Mr. Froude submits in his Opposition (page 2, lines 12-13) that "the process for determining whether or not Mr. Froude would be subject to a LTSO occurred independently from his sentencing". This is incorrect. Justice Rady arrived at her decision to impose a LTSO of maximum duration in this case after an extensive application by the prosecutor to have Mr. Froude designated a Long-Term Offender. Significant evidence was called at this hearing, including forensic psychiatric evidence, regarding the level of risk posed by Mr. Froude to public safety. It was on the basis of the evidence called at this hearing that the judge designated Mr. Froude a Long-Term Offender on May 5, 2008 and then on May 16, 2008, sentenced him to an additional 30 months imprisonment and a maximum 10 year LTSO (and other ancillary orders which also formed part of the sentence including a DNA order and a weapons prohibition). As such, the "process" for the LTO designation and all of the components of the sentence, including the LTSO, was the same - based upon the application of the Crown and the evidence presented to the court.

15. Pursuant to s.753.2 of the *Criminal Code* (as set out above), Mr. Froude's LTSO did not *come into effect* (i.e. begin) until his release from prison on November 12, 2010. Obviously, it would not make sense for a community supervision order to run concurrently with a jail sentence as, depending on the length of either or both, that may render a LTSO ineffective and moot. Therefore, much like a probation order, a LTSO does not begin until an offender is released from prison, *but it is imposed at the time of sentencing*.

16. Finally, both the term of imprisonment imposed under s.753.1(3)(a) and the LTSO can be appealed as part of the same appeal process. Mr. Froude chose only to appeal the custodial portion of his sentence to the Ontario Court of Appeal, but it was open to him to appeal the 10 year LTSO at the same time, which he did not do. Indeed, if any offender wishes to appeal the imposition and/or duration of a LTSO, they must

5

indicate their intention to do so within 30 days of being *sentenced*. There are many cases in Ontario in which an offender appeals both aspects of a LTO sentence (custodial and LTSO) and the province's highest court (Ontario Court of Appeal), considers all components of the sentence in determining the appropriateness of the overall sentence imposed (see, for example, *R. v. Smith* [2011] O.J. No. 1448 (C.A.)).

17.   This affidavit is made in good faith, in support of a request by Canada for the extradition of Mr. FROUDE to be prosecuted on the criminal charges and for the enforcement of a LTSO, and for no improper purpose.

SWORN BEFORE ME, in the City    )
of Toronto, in the Province of         )
Ontario, this 30th day of                 )
_____March_____, 2016              )

_____        _____
A Commissioner of Oaths, etc.                           Karen Shai
Gregory J. Tweney