HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
(E-mail: Hilary_Potashner@fd.org)
MARISOL ORIHUELA (Bar No. 261375)
(E-Mail: Marisol_Orihuela@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2644
Facsimile: (213) 894-0081

Attorneys for Defendant
KENNETH WAYNE FROUDE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>KENNETH WAYNE FROUDE,<br><br>　　　　Defendant. | NO. CV 15-8623-JLS-E<br><br>**KENNETH WAYNE FROUDE'S SUPPLEMENTAL BRIEF IN OPPOSITION TO GOVERNMENT'S REQUEST FOR EXTRADITION** |

Kenneth Wayne Froude, by and through his attorney of record, Deputy Federal Public Defender Marisol Orihuela, hereby submits this supplemental brief opposition to the government's request for extradition.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　HILARY POTASHNER
　　　　　　　　　　　　　　　　　　Federal Public Defender


DATED: May 26, 2016　　　　By  */s/ Marisol Orihuela*
　　　　　　　　　　　　　　　　　　MARISOL ORIHUELA
　　　　　　　　　　　　　　　　　　Deputy Federal Public Defender

# I. INTRODUCTION

The government seeks to extradite Mr. Froude to Canada because he is on supervision after completing his term of imprisonment, and because Canada has charged him with violating the conditions of supervision. In its earlier pleading and at the hearing on this matter, the defense argued that his unserved supervision term did not constitute part of his sentence, and that, because the violations of his supervision were analogous to violations of supervised release in the United States, extradition based on the new charges was not permitted under the treaty.

During the extradition hearing on this matter, the Court made inquiries of the parties regarding Mr. Froude's supervision, and the defense requested the ability to file supplemental briefing. The government has filed a supplemental brief, and Mr. Froude hereby responds to the government's arguments. For the reasons set forth below, Mr. Froude respectfully asserts that his extradition is not permitted by the treaty.

# II. ARGUMENT

The defense reasserts the arguments made in its original brief and at the extradition hearing. Because the Court's inquiries were limited to new charges lodged upon Mr. Froude in Canada, as opposed to the question of whether the unserved portion of his supervision order constituted a ground for extradition, this brief only addresses issues related to the new charges.

### A. The Rule Of Specialty Requires This Court To Analyze Dual Criminality For Each New Charge

In extradition matters, "[t]he doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite." *Quinn v. Robinson*, 783 F.2d 776, 783 (9th Cir. 1986) (citing *United States v. Rauscher*, 119 U.S. 407, 420–21, 7 S.Ct. 234, 241, 30 L.Ed. 425 (1886)). For this reason, in order for Canada to try Mr. Froude on the three charges it seeks to extradite Mr. Froude for, the government must show that the dual criminality requirement is met for each new charge. In other words, if the

Court determines that dual criminality is met for one, but not for another new charge, it should only permit extradition on the charge for which dual criminality has been shown.

"Dual criminality requires that an accused be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting nations." *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998). Although dual criminality permits *some* difference between the statute in the requesting country and the statute in the country assessing whether extradition is appropriate, the conduct alleged "must be substantially analogous" to felonious conduct in the requested state. *Id.*, 138 F.3d at 764. In order to satisfy dual criminality, the statute charged and the statute cited must be able to "both be used to punish the acts with which [the individual] is charged." *Id.*, 138 F.3d at 766. Otherwise, the "analogy" requirement of dual criminality is not met. *Id.*

In this matter, the government originally argued that dual criminality was met under the federal escape statute, 18 U.S.C. § 751. At the hearing, the Court sua sponte inquired whether the charge alleging that Mr. Froude failed to remain in Canada meets dual criminality because it may be analogous to 18 U.S.C. § 1073. The defense addresses that question below. The Court also inquired whether the Canadian government could pursue all three charges if the Court found dual criminality met as to any single one of them, but the rule or doctrine of specialty prohibits that. For that reason, the Court must only permit extradition on the charges, if any, it finds that the dual criminality requirement has been met.

**B.   The Charge Alleging that Mr. Froude Failed to Reside in a Community Correctional Centre or Facility Fails to Meet Dual Criminality**

The government argues that the alleged conduct -- failing to reside at a community correctional center -- is analogous to the crime of escape in the United States, 18 U.S.C. § 751(a). In order to commit the crime of escape pursuant to § 751(a), an individual must be in "custody" of the Attorney General or authorized

representative, or from any institution or facility in which he is confined by the direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest. *See* 18 U.S.C. § 751(a).[1]

The government argues in its supplemental brief that dual criminality is met for this charge because (1) the correctional Services of Canada ("CSC") is analogous to the United States Bureau of Prisons and (2) and the CSC owned and operated the CCC where Mr. Froude was residing as a condition of his long-term supervision order. *See* Gov's Supplement Brief at 2; Dkt. 28 at 4. The government also presented additional argument and evidence regarding the structure of supervision in Canada and the restrictions imposed on Mr. Froude. For the reasons set forth below, the government's evidence confirms that Mr. Froude was not in "custody," and the government's remaining arguments misread the requirements of §751. Mr. Froude's alleged conduct fails to satisfy dual criminality, and he cannot be extradited to face a charge for failing to reside at a community confinement center.

### 1. Mr. Froude Was Not In "Custody"

Even if an individual ordered to reside at a halfway house as a condition of supervised release could be prosecuted under § 751 depending on how restrictive the conditions were at that facility, the conditions of the community center at which Mr. Froude was residing are similar to conditions at a U.S. halfway house that would not support a determination that someone residing there was in "custody." The conditions imposed on Mr. Froude at the facility at which he was residing were having security

---

[1] The government argues that Section 753.3(a) of the Canadian Code sets out the provision that required Mr. Froude to remain in Canada. The defense could not find that provision. The defense located conditions of release set forth in the Corrections and Conditional Release Regulations. The Canadian Code only prescribes the potential punishment available for an individual who, without reasonable excuse, fails or refuses to comply with long-term supervision. *See* Canadian Criminal Code 753.3(1).

4

there, having accompanied community access, accounting for residents twice a day and sometimes at night, taking samples of urine, and prohibition on alcohol, drugs, weapons, and pornography. These are conditions that are similar to probation. In *United States v. Burke*, 694 F.3d 1062, 1064-65 (9th Cir. 2012), the government presented evidence that the facility where the defendant was residing had a curfew, limited visitors, assigned beds, restricted telephone use, and required residents to advise staff of their comings and goings in order to leave the premises. *Id.* at 1065. In other words, in *Burke*, the defendant was on a "conditional[] release from incarceration." *Id.* A similar situation is found here. Mr. Froude could leave the facility, but would be checked upon daily -- just like the defendant in *Burke*. The conditions of urine testing and prohibitions on "contraband" are similar to standard conditions of supervised release and probation in this district. *See* General Order 05-02, available at: https://www.cacd.uscourts.gov/sites/default/files/general-orders/GO-05-02.pdf. Even in *Burke*, the defendant was placed on "escape or abscond status" after failing to return to the facility. As the Ninth Circuit noted, that did not mean that the defendant was in "custody" for purposes of the escape statute. *See Burke*, 694 F.23d at 1064 (noting that the same was true for the defendant in *United States v. Baxley*, 982 F.2d 1265 (9th Cir. 1992)).

For these reasons, *Burke* is instructive in this case, and the Court should conclude that Mr. Froude's alleged conduct -- failing to reside at the community center -- fails to meet dual criminality because it would not constitute the crime of escape, under § 751, in the United States.[2]

---

[2] The Court should also consider that an individual in the United States who is residing at a residential facility while on supervision, or while on pretrial release, would not accumulate any credits toward a sentence of imprisonment. *See Reno v. Koray*, 515 U.S. 50 (1995).

5

## 2. Even if He was in "Custody," Mr. Froude's Alleged Conduct Is Not Analogous to Being in Custody "of the Attorney General"

The government's concession regarding who imposed Mr. Froude's condition that he reside at a community confinement center, as well as the structure of § 751, indicates that Mr. Froude's conduct is not analogous to conduct that would violate § 751.

The government concedes that the condition of the long-term supervision order that Mr. Froude reside at a community confinement center was imposed not by the Court and not by the Correctional Services of Canada, but by the Parole Board of Canada. *See* Gov's Supplemental Brief at 8; Dkt. 28 at 10. As the government notes, the Parole Board of Canada is independent from the Correctional Services of Canada. As the government also notes, this specific condition of confinement is not a standard condition of confinement imposed pursuant to regulations set forth in the Corrections and Conditional Release Act. Rather, the Parole Board uses its discretion to determine whether this condition should be imposed.

The Parole Board of Canada is not analogous to the Attorney General for purposes of § 751, and thus the conduct alleged does not meet either of first two clauses of §751(a) (prohibiting escaping from the custody of the Attorney General or his authorized representative, or from any institution or facility in which one is confined by direction of the Attorney General). The conduct alleged cannot meet the third clause of § 751(a), because that clause requires that the custody be by virtue of a process issued by a court, judge, or magistrate judge. No court or judge imposed this condition of supervision on Mr. Froude. Finally, the conduct cannot meet the fourth clause of § 751(a), because it does not relate to an escape from an arrest.

Separately, the structure of the §751, and the apparent purposes of the various clauses of the statute, confirm that the alleged conduct is not substantially analogous to escape. The first two clauses of the statute appear to be directed toward individuals who are serving a term of imprisonment. Indeed, traditionally, the escape statute is

used to prosecute individuals who escape during their term of imprisonment or fail to show up for a sentence of imprisonment. *See, e.g., United States v. Peterson*, 592 F.2d 1035 (9th Cir. 1979).[3] The first clause prohibits escaping from the custody of the Attorney General, which appears to target terms of imprisonment. The second clause can be interpreted to prohibit escape in situations where, in lieu of traditional custody, an individual is permitted by the Attorney General to serve a term of imprisonment at a facility (which regularly occurs the last three to six months of a term of imprisonment). The third clause appears to be the broadest clause, permitting prosecution where custody has been ordered by a Court. None of those situations apply in this case. Mr. Froude has completed his term of imprisonment, and his residence at a community confinement center was not *in lieu* of a term of imprisonment. No court had imposed this specific condition of his supervision. Because Mr. Froude has completed his term of imprisonment and no court has ordered that he reside at the community confinement center, the escape statute does not proscribe the conduct alleged against Mr. Froude, and dual criminality has not been met as to this charge.

## C. The Charge Against Mr. Froude That He Unlawfully Failed to Remain In Canada Does Not Meet Dual Criminality

The government argues that 18 U.S.C. § 1073 prohibits analogous conduct to that charged in Canada against Mr. Froude, but they are wrong.

Section 1073 prohibits traveling in interstate or foreign commerce *with the intent of*, inter alia, avoiding prosecution, or custody or confinement after conviction. Because Mr. Froude's alleged conduct lacks any intent to avoid either prosecution or custody or confinement after conviction, the conduct alleged fails to be analogous to the crime of fleeing to avoid prosecution.

---

[3] The defense could not find cases distinguishing between the different clauses of the statute, but does note that in each of the cases cited by the parties, there existed a court order that mandated the "custody" at issue.

In order to commit a crime under § 1073, one must not only leave the jurisdiction, but also have the intent to avoid prosecution. But here, the conduct alleged is *only the act of leaving*. In other words, it is not that Mr. Froude is alleged have engaged in a crime and then, intending to avoid prosecution or confinement for that crime, left Canada. "It is true that the gravamen of the offense charged in the fugitive felon act is that the defendant fled a state with intent to avoid prosecution therein, and mere absence from the state of prosecution, though it renders one a fugitive from justice for interstate rendition . . . . is not sufficient proof of the federal crime." *Barrow v. Owen*, 89 F.2d 476, 478 (5th Cir. 1937). Thus, the conduct, if it had occurred in the United States, would not have been analogous to fleeing a jurisdiction *with the intent to avoid prosecution*.

Similarly, the conduct alleged lacks an intent to avoid confinement or custody, because Mr. Froude had already been released from prison when he left Canada, not that he had been convicted and did not want to report for confinement. *See, e.g., United States v. Alcarez Camacho*, 340 F.3d 794, 797 (9th Cir. 2003) (noting that Section 1703 applied to failure to report for sentencing). Here, there was no upcoming sentencing which the government could argue could form the basis of the intent to leave the jurisdiction.[4]

Because intent is a required element for a prosecution of 18 U.S.C. § 1703, and it is missing from the conduct alleged against Mr. Froude for leaving Canada fails to meet the dual criminality requirement of extradition, and Mr. Froude cannot be extradited to Canada on this charge.

---

[4] A comparison to the conduct, if it had occurred in the United States, is illustrative. If Mr. Froude were subject to supervision in the United States and left the country, not because he had engaged in conduct that could lead to prosecution and not because he was to report for confinement, he would not be subject to prosecution under § 1073 because the intent element would be missing.

8

**D. The Charge Alleging that Mr. Froude Failed to Obey the Law and Keep the Peace Fails to Meet Dual Criminality**

The government argues that the charge alleging that Mr. Froude failed to obey the law and keep the peace is analogous to §751. It is not clear from the Information filed in Canada that the conduct alleged against Mr. Froude that forms the basis of this charge is leaving the residential facility. *See* Exhibit D to Karen Shai Affidavit. Nor has the government presented evidence on what it means to fail to obey the law and keep the peace, for purposes of violating a supervision order in Canada. As stated, failing to obey the law and keep the peace could mean various types of conduct that could be alleged against Mr. Froude. As such, it cannot be determined that the conduct alleged would be a felony in the United States. As charged and alleged, there is no analogy, let alone substantial analogy, between this charge and the escape statute in the United States, and for that reason this charge fails to meet dual criminality.

## III. CONCLUSION

For the reasons set forth above, and those argued at the hearing and in earlier filings, Mr. Froude respectfully requests that this Court deny the government's request to extradite him to Canada.

                                              Respectfully submitted,

                                              HILARY POTASHNER
                                              Federal Public Defender

DATED: May 26, 2016          By *\/s\/ Marisol Orihuela*
                                              MARISOL ORIHUELA
                                              Deputy Federal Public Defender