HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
(E-mail: Hilary_Potashner@fd.org)
ASHFAQ CHOWDHURY (Bar No. 243763)
(E-Mail: Ron_Chowdhury@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1456
Facsimile: (213) 894-0081

Attorneys for Petitioner
KENNETH WAYNE FROUDE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| KENNETH WAYNE FROUDE,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>Louis Milusnic, Warden<br><br>　　　　Respondent. | NO. CV 15-8623-JLS-E<br><br>**KENNETH WAYNE FROUDE'S PETITION FOR WRIT OF HABEAS CORPUS/APPEAL TO THE DISTRICT COURT PURSUANT TO 28 U.S.C. § 2241(c)(3) WITH REGARD TO THE COURT'S JUNE 17, 2016 ORDER CERTIFYING EXTRADITABILITY** |

　　　　Kenneth Wayne Froude, by and through his attorney of record, Deputy Federal Public Defender Ashfaq G. Chowdhury, hereby submits this petition for a writ of habeas corpus proceeding/appeal pursuant to 28 U.S.C. § with regard to the Court's June 17, 2016 order certifying extraditability (Docket No. 32).

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　HILARY POTASHNER
　　　　　　　　　　　　　　　　Federal Public Defender

DATED: July 11, 2016　　　　By _/s/ Ashfaq Chowdhury_____
　　　　　　　　　　　　　　　　ASHFAQ CHOWDHURY
　　　　　　　　　　　　　　　　Deputy Federal Public Defender

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 1

III. STANDARD OF REVIEW .......................................................................... 2

    A.    Standard for Extradition ..................................................................... 2

    B.    Scope of Review on *Habeas Corpus* Petition to Appeal Magistrate's Order of Extraditability ........................................................................ 3

IV. DISCUSSION ............................................................................................... 4

    A.    Mr. Froude Cannot Be Extradited to Serve a Sentence When He Has Already Completed His Sentence ......................................................... 4

        1.    The Documents Underlying the Extradition Request Prove that Mr. Froude Has Completed His Sentence ...................................... 4

        2.    Canadian Law Confirms that a Sentence Does Not Include an LTSO ................................................................................................. 6

    B.    The Alleged Violations of Mr. Froude's LTSO Cannot Form the Basis of Extradition Because They Are Not Crimes in the United States ............ 8

    C.    The Rule Of Specialty Requires This Court To Analyze Dual Criminality For Each New Charge ................................................... 11

    D.    The Charge Alleging that Mr. Froude Failed to Reside in a Community Correctional Centre or Facility Fails to Meet Dual Criminality ............... 12

    E.    Mr. Froude Was Not In "Custody" .................................................. 13

    F.    Even if He was in "Custody," Mr. Froude's Alleged Conduct Is Not Analogous to Being in Custody "of the Attorney General" ..................... 14

    G.    The Charge Against Mr. Froude That He Unlawfully Failed to Remain In Canada Does Not Meet Dual Criminality ...................................... 16

    H.    The Charge Alleging that Mr. Froude Failed to Obey the Law and Keep the Peace Fails to Meet Dual Criminality ................................... 17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmad v. Wigen*,
  726 F. Supp. 389 (E.D.N.Y. 1989) (Weinstein, J.) ..................................... 4

*Barrow v. Owen*,
  89 F.2d 476 (5th Cir. 1937) .................................................................... 16

*Clarey v. Gregg*,
  138 F.3d 764 (9th Cir. 1998) .................................................................. 11

*In re Extradition of Lukes*,
  02-MC-23-FTM, 2003 WL 23892681 (M.D.Fla. May 8, 2003) ............................... 3

*Factor v. Laubenheimer*,
  290 U.S. 276 (1933) ................................................................................ 2

*Fernandez v. Phillips*,
  268 U.S. 311 (1925) ................................................................................ 3

*Petition of France for Extradition of Sauvage*,
  819 F. Supp. 896 (S.D. Cal. 1993) .............................................................. 2

*In re Mackin*,
  668 F.2d (2d Cir. 1981) .............................................................................. 1

*Quinn v. Robinson*,
  783 F.2d 776 (9th Cir. 1986) .................................................................. 11

*Reno v. Koray*,
  515 U.S. 50 (1995)................................................................................ 14

*United States v. Alcarez Camacho*,
  340 F.3d 794 (9th Cir. 2003) (noting that Section 1703 applied to
  failure to report for sentencing) .............................................................. 16

*United States v. Baxley*,
  982 F.2d 1265 (9th Cir. 1992) ........................................................ 10, 13

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Page(s)**

**Cases**

*United States v. Burke,*
   694 F.3d 1062 (9th Cir. 2012) ....................................................... 9, 10, 13

*United States v. Foster,*
   754 F.3d 1186 (10th Cir. 2014) ................................................................ 10

*United States v. Jones,*
   569 F.2d 499 (9th Cir. 1978) ...................................................................... 9

*United States v. Keller,*
   912 F.2d 1058 (9th Cir. 1990) .................................................................... 9

*United States v. Peterson,*
   592 F.2d 1035 (9th Cir. 1979) .................................................................. 15

*United States v. Sack,*
   379 F.3d 1177 (10th Cir. 2014) ................................................................ 10

*United States v. Winn,*
   57 F.3d 1078 (9th Cir. 1995) ( unpublished) .............................................. 9

**Statutes**

18 U.S.C. § 751 ................................................................................... *passim*

18 U.S.C. § 751(a) ................................................................. 12, 14, 15

18 U.S.C. § 1073 ................................................................... 11, 16, 17

18 U.S.C. § 3184 ............................................................................. 2

18 U.S.C. §4082(d) .......................................................................... 9

28 U.S.C. § 2241(c)(3) ...................................................................... 1

Canadian Law ................................................................................. 6

Code 753.3(1) ................................................................................ 12

# <u>TABLE OF AUTHORITIES</u> (cont'd)

**Page(s)**

Corrections and Conditional Release Act..........................................................................14

LTSO. The Canadian Corrections and Conditional Release Act ................................7, 8

**Other Authorities**

Michael Abbell, Extradition to and from the United States (2010)........................3

iv

## **MEMORANDUM**

## **I. INTRODUCTION**

Kenneth Wayne Froude, whom the Government of Canada seeks to have extradited from the United States to Canada, and who is currently a prisoner in the custody of the Bureau of Prisons at the Metropolitan Detention Center in Los Angeles, files this habeas petition to appeal the magistrate court's June 17, 2016 order certifying his extraditability.  (Docket No. 32.)

In extradition proceedings, there is no statutory mechanism for an appeal of a magistrate's order certifying extraditability: the appeal must be taken through a habeas corpus petition pursuant to 28 U.S.C. § 2241(c)(3).  *See In re Mackin*, 668 F.2d (2d Cir. 1981) (citing cases).[1]

## **II. STATEMENT OF FACTS**

Mr. Froude was convicted of criminal offenses in Canada and sentenced in 2008 to serve 30 months for these offenses.  He completed that sentence in 2010.  At the time he was sentenced, he was also ordered to serve a term of supervision.  The terms of the supervision were not imposed until after Mr. Froude completed his sentence in 2010.  Then, the Correctional Service of Canada issued the conditions of a long-term supervision order ("LTSO").

Mr. Froude violated the terms of his LTSO and was subject to additional prosecution in Canada.  He was sentenced to another term of imprisonment, which he completed.  He then was subject, again, to a LTSO.  During the term of his supervision,

---

[1] Mr. Froude will separately file with the Court the relevant extradition treaty and documents related to Canada's extradition request should the Court require it.  The extradition treaty and all referenced exhibits and documents were filed with the Court in Docket No. 1, Request for Extradition of the Fugitive, Kenneth Wayne Froude, to the Government of Canada (Nov. 4, 2015).

1

he left Canada and entered the United States, residing in the Southern California area without any criminal arrests or convictions until the instant matter.   The government now seeks his extradition to Canada based on his alleged violations of his LTSO, and because, according to the government, not completing his LTSO is tantamount to not completing his sentence.

### III.  STANDARD OF REVIEW

**A.    General Standard for Extradition**

This Court's authority to certify extradition is governed by both statute and treaty.  *Factor v. Laubenheimer*, 290 U.S. 276, 287 (1933) ("[N]o branch of the United States government has any authority to surrender an accused to a foreign government except as provided for by statute or treaty.").  A magistrate judge must, pursuant to 18 U.S.C. § 3184, determine whether "the evidence is sufficient to sustain the charge under the provision of the proper treaty or convention."  In accordance with the Extradition Treaty Between the United States of America and Canada ("the Treaty"), this Court may grant the extradition request only if the evidence is found sufficient, under the laws of the United States, to justify the committal.

In an extradition proceeding, the government bears the burden of establishing extraditability: the government must show, among other things, the existence of a treaty providing for extradition for the charged offense for which the warrant was issued. *Petition of France for Extradition of Sauvage*, 819 F. Supp. 896, 897 (S.D. Cal. 1993). Furthermore, the treaty requires that the allegations meet the "dual criminality" provision.  Article 2 of the 1971 Extradition Treaty provides that "Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment."  As set out in *In re Extradition of Platko*,

> the determination of extraditability requires that the doctrine of "dual
> criminality" be satisfied. The charged conduct must be illegal in both the
> requesting and the requested nations. . . . Dual criminality is "an essential

2

element of the government's burden of proof to establish a basis for extradition." . . . . The court need not find identical criminal statutes defining an offense, only conduct that would be a crime in both jurisdictions.

213 F.Supp.2d 1229, 1236 (S.D.Cal. 2002) (citations omitted); *see also In re Extradition of Lukes*, 02-MC-23-FTM, 2003 WL 23892681, at *3 (M.D.Fla. May 8, 2003) (noting that dual criminality "is in effect a reciprocity requirement which is intended to ensure each of the respective states that they (and the relator) can rely on corresponding treatment, and no state shall use its processes to surrender a person for the conduct which it does not characterize as criminal).

**B.     Scope of Review on *Habeas Corpus* Petition to Appeal Magistrate's Order of Extraditability**

The scope of review on a habeas petition seeking review of a magistrate's order certifying extraditability is not de novo.  *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).  Generally, the questions the district court may consider on appeal are "whether the magistrate had jurisdiction, whether the offense charged is within the treaty, and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused was guilty."  *Id.*  The question of "whether the offense charged is within the treaty" has been subdivided by subsequent cases into at least four subsidiary questions: (1) whether there is an applicable treaty in force, (2) whether the offense is an extraditable offense as defined by the applicable treaty, (3) whether the offense was committed in circumstances which provide the requisite jurisdictional basis to permit extradition under the applicable treaty, and (4) whether a defense under the applicable treaty bars extradition.  *See* Michael Abbell, EXTRADITION TO AND FROM THE UNITED STATES (2010) at 286-87 (collecting cases).

The scope of review on *habeas corpus* of a decision of an extradition magistrate has broadened over time from the narrow limits originally set by *Fernandez*.  *See*

3

1   *Ahmad v. Wigen*, 726 F. Supp. 389, 396 (E.D.N.Y. 1989) (Weinstein, J.); *Extradition of*

2   *Manzi*, 888 F.2d 204, 206 (1st Cir. 1989) (holding that claims that raise fundamental

3   issue of substantive or procedural due process are reviewable on *habeas corpus* in

4   connection with extradition proceedings in the United States).

## IV. DISCUSSION

**A.   Mr. Froude Cannot Be Extradited to Serve a Sentence When He Has
Already Completed His Sentence**

Mr. Froude's sentence was pronounced on May 15, 2008.  He was sentenced to
ten years imprisonment, but, after being given credit for the time spent in pre-trial
custody, the resulting sentence for his conviction was 30 months.  The government
concedes that Mr. Froude completed the 30-month sentence imposed by the sentencing
court.  The government seeks to extradite Mr. Froude because of an order of
supervision, but the government cannot prove that the LTSO is an unexpired
"sentence" under the Treaty or Canadian law that permits the extradition of Mr. Froude.

**1.   The Documents Underlying the Extradition Request Prove that
Mr. Froude Has Completed His Sentence**

The Treaty requires, in cases where the individual whose extradition is sought
has already been convicted, that the extradition request "be accompanied by the
judgment of conviction and sentence passed against him in the territory of the
requesting State."  *See* Article 9(4) of the Treaty.  The Treaty does not provide for
extradition of supervision orders expressly.  For that reason, extradition in this case --
for the alleged failure to complete a supervision order ("LTSO"), is permitted under the
Treaty only if it is part of the "sentence" imposed in the judgment of conviction.

The judgment in this case is found at Exhibit A to the Affidavit of Lisa Munson,
and a review of the document indicates that the "sentence" imposed on Mr. Froude was
30 months imprisonment, and that the "sentence" imposed does not include the LTSO.
The first two pages, titled "Warrant of Committal on Conviction" for the "Superior
Court of Justice" list the sentences imposed on each of the three offenses of which Mr.

4

Froude, references the thirty months imposed on each of those counts (after credit for pre-trial custody), and make no reference whatsoever to the LTSO.  The third page, which is also titled "Warrant of Committal on Conviction" again lists the sentence as 30 months.

Separately, in handwriting, there is a reference to Mr. Froude being found to be a long-term offender.  Although a hand-written notation notes "10 years," the document does not state that the sentence includes a term of long-term supervision of 10 years, and the notations are not listed underneath the pronounced sentence of 30 months.  *See* Exhibit A to Affidavit of Lisa Munson.[2]   In other words, thee judgment fails to indicate that the "sentence" includes a term of supervision.  Indeed, the references to the sentence imposed all refer to 30 months, and there is no dispute that Mr. Froude completed his 30-month sentence in 2010.

The remaining documents submitted by the government in support of the extradition request confirm that his "sentence" is the term of imprisonment imposed only.  The affidavit of Karen Shai treats his sentence and the term of supervision as separate when discussing the requirements for an individual to be subject to an LTSO.  *See* Affidavit of Karen Shai at ¶ 15.  The process for determining whether or not Mr. Froude would be subject to an LTSO occurred independently from his sentencing.  Mr. Froude was found to be subject to an LTSO for being a long-term offender on May 5, 2008, over a week before his sentence was determined.  *See id*. at ¶27; Exh. G to Affidavit of Karen Shai.   The determination of whether an individual should be subject to an LTSO references the *sentence* that will be imposed as a condition precedent to the finding of being a long-term offender.  *See* Section 753.1(1) to Canadian Criminal Code, Exh. A to Affidavit of Karen Shai (requiring for imposition of an LTSO that,

---

[2] The Warrant of Committal on Conviction that followed Mr. Froude's violations of his LTSO in 2010 do not even reference the LTSO at all.  *See* Exh. C to Affidavit of Lisa Munson.

5

inter alia, a "sentence of two years or more" would be appropriate)); *see also* Exh. G to Affidavit of Karen Shai.[3]  The transcript of Mr. Froude's sentencing on May 16, 2008 discusses the term of supervision initially, and then proceeds to "turn[] to [the] sentence," s*ee* Exh. H to Affidavit of Karen Shai, suggesting that the sentence is the term of imprisonment.   Based on the documentation submitted to this Court, the "sentence" imposed on Mr. Froude is a term of imprisonment of 30 months.  That sentence has already expired.

The documents relating to the conditions of Mr. Froude's long-term supervision also indicate that the LTSO is not part of the sentence imposed.  The conditions of his supervision were apparently not imposed until he completed his sentence in 2010.  *See* Exh. B to Affidavit of Lisa Munson (certificate of Long Term Supervision imposing conditions).  Further, the warrant of apprehension in this extradition does not seek the arrest of Mr. Froude for failure to serve a sentence.  *See* Exh. E to Affidavit of Karen Shai.

The government cannot show that the terms of the treaty have been complied with because the Treaty does not provide for extradition for an LTSO that has not been completed.  The Treaty provides for the extradition of individuals whose "sentences" have not been completed, but in this case that cannot be satisfied.  The sentence imposed in this case was 30 months, and Mr. Froude completed that sentence in November 2010.

## 2.    Canadian Law Confirms That a Sentence Does Not Include an LTSO

Should this Court have any doubt as to whether a "sentence" under the Treaty includes an LTSO, it should look to Canadian law for guidance on that issue.  Because

---

[3] Ms. Shai herself differentiates between a term of LTSO and a sentence, referring to Ms. Froude being "subject to his LTSO" "[u]pon completion of his sentence."  *See* Declaration of Karen Shai at ¶33.

6

Canadian law provides that a sentence and a LTSO are separate and one is not part of the other, the Court should conclude that a "sentence" does not include a LTSO, and deny the government's request for extradition based on a claim of an unexpired sentence.

The statutory framework for imposition of a LTSO treats the imposition of supervision for long-term offenders independently from the sentence imposed upon conviction of an offense. Section 753.1 of the Canadian Criminal Code provides for separate orders, one for a sentence -- which corresponds to a term of imprisonment, and one for a term of supervision.  *See* Section 753.1(3), Exh. A to Affidavit of Karen Shai.  Further, Section 753.2(1) of the Canadian Criminal Code provides long-term supervision for an individual found to be a long-term offender begins after "the sentence for the offense for which the offender has been convicted" is completed.  *See* Section 753.2(1).[4]  The statutory definitions of "sentence" also fail to include supervision orders such as the LTSO.  The Canadian Corrections and Conditional Release Act defines "sentence" as "a sentence of imprisonment and includes a sentence imposed by a foreign entity . . and a youth sentence."[5]  *See* CCCRA §2(1).  The Canadian Criminal Code's definition of "sentence" also fails to include an LTSO.  *See* CCC §673 (defining "sentence" for purpose of appeals).

Canadian case law confirm that this process is separate, while it happens "concurrent with the sentencing process."  *McMurray v. National Parole Board*, 2004 FC 462, ¶ 6 (Fed. Ct. of Canada 2004) (noting that an individual was made subject to long-term supervision concurrently with sentencing).[6]  In addressing the jurisdiction of the courts over terms of long-term supervision, the Federal Court of Canada expressly

---

[4] available at: http://laws-lois.justice.gc.ca/eng/acts/C-46/page-196.html#docCont.

[5] available at: http://laws-lois.justice.gc.ca/eng/acts/C-44.6/page-1.html#h-2.

[6] available at:
http://www.canlii.org/en/ca/fct/doc/2004/2004fc462/2004fc462.html?resultIndex=1.

noted that "[l]ong-term supervision does not form part of the offender's sentence." *Id.* at ¶ 25.  The Supreme Court of Canada has also discussed the distinction between a sentence imposed for an offense and supervision orders.  *See R. v. L.M.*, 2008 SCC 31, ¶ 38 (Sup. Ct. Canada 2008).[7]  In its discussion, the Supreme Court of Canada held that there exists a "distinction . . . between sentencing *per se* and the procedure for imposing a period of post-sentence supervision." *Id.*  As discussed by the Supreme Court of Canada, the supervision process is an administrative one, while the sentencing process is a judicial one.  For that reason, the Supreme Court of Canada cautioned that judges should "remain faithful to the distinction between sentencing and the imposition of a supervision period.  A judge who confuses these two processes "risks straying from the normative principles and the objectives of sentencing." *Id.* at ¶ 49.

Because Canadian law confirms that an LTSO is not part of the "sentence" imposed on Mr. Froude, and Mr. Froude has completed his sentence of 30 months, the government cannot extradite Mr. Froude to serve an unexpired sentence in Canada.

**B.     The Alleged Violations of Mr. Froude's LTSO Cannot Form the Basis of Extradition Because They Are Not Crimes in the United States**

The government's second ground for seeking extradition is the claim that Mr. Froude has violated the terms of his LTSO.  The government offers evidence to show that those violations are crimes carrying a potential term of imprisonment of one year or more, but it has failed to show that by analogy that the conduct would constitute a felony in the United States.  For this reason, the government has failed to satisfy the dual criminality provision of the Treaty, and extradition must be denied.

The government's argument, that the conduct alleged against Mr. Froude is analogous to "escape" under 18 U.S.C. § 751 is unavailing.   An escape under § 751 is

---

[7] available at: http://www.canlii.org/en/ca/scc/doc/2008/2008scc31/2008scc31.html?autocompleteStr=R.%20v.%20L.M.&autocompletePos=1.

8

possible only when one is a prisoner – that is, subject to a custodial sentence.  The extension of § 751 to residential facilities, or "half-way houses," is permitted because individuals subject to a custodial sentence serve part of that sentence at residential facilities.  That is the purpose of 18 U.S.C. §4082(d).  Here, there is no dispute that Mr. Froude has completed his custodial sentence and any requirement to reside in a residential facility was a condition of supervision, not in lieu of imprisonment.

Controlling Ninth Circuit law instructs that Mr. Froude's alleged conduct does not satisfy the element of "custody" for a violation of § 751, because Mr. Froude's condition to reside at a residential facility was not in lieu of his incarceration at a prison.  In *United States v. Keller*, 912 F.2d 1058 (9th Cir. 1990), the defendant had been ordered – as a sentence pursuant to a probation revocation – to report to a community residential center.  In other words, it was not a condition of probation that he reside at the residential center that constituted an escape for purposes of § 751, the operative fact was that a "sentence of imprisonment" had been imposed after his probation was revoked, *see* 912 F.2d at 1059, and he had failed to comply with that sentence.  Once his probation had been revoked and a sentence of imprisonment imposed, the sentencing court had "committed" the defendant to the custody of the Attorney General.  *Id.* at 1060.  That "commitment" was a necessary aspect violating § 751.  Likewise, the Ninth Circuit has held that an individual commits an "escape" in violation of § 751 when he leaves a facility to which he has been designated to reside at pursuant to a pronounced sentence of imprisonment.  *See United States v. Jones*, 569 F.2d 499 (9th Cir. 1978) ("After . . . commitment to prison, [defendant] was released to a contract "half-way house" . . . . "); *United States v. Winn*, 57 F.3d 1078 (9th Cir. 1995) ( unpublished) (holding that defendant who was subject to confinement after being returned to custody pursuant to probation revocation committed an escape when he left a residential facility).

The government is incorrect in arguing that *United States v. Burke* is not authoritative on this issue.  694 F.3d 1062 (9th Cir. 2012).  In that case, the Ninth

9

Circuit held that where a prison term had been completed, and a defendant was residing at a residential facility as a condition of supervised release, a defendant was not in "custody" for purposes of § 751. *Id.*at 1064. The Ninth Circuit noted that the defendant "was not serving a prison sentence, nor was he confined to [the residential facility] under conditions equivalent to custodial incarceration." *Id.* The same is true here. Mr. Froude was not serving a prison sentence when the allegations occurred. *Burke* controls this issue, and pursuant to *Burke*, this Court should determine that the allegations against Mr. Froude do not constitute a felony in the United States.

Arguably, *United States v. Foster*, 754 F.3d 1186, 1191 (10th Cir. 2014), lends some support to the government's argument that violating a supervision order that includes a residence requirement could constitute an escape under § 751. However, an important distinction in *Foster* and this instant matter is that the residence requirement in *Foster* was imposed by the sentencing court. Here, the terms of Mr. Froude's LTSO were all imposed by the Parole Board *after* he completed his sentence. Thus, there does not appear to be a "commitment" to custody as required by § 751. Second, the Tenth and Ninth Circuits have conflicting views on what constitutes "custody" for purposes of §751. In the Ninth Circuit, residing at a residential facility while awaiting trial does not satisfy the "custody" requirement of Section 751, *see United States v. Baxley*, 982 F.2d 1265 (9th Cir. 1992) while in the Tenth Circuit it does, *see United States v. Sack*, 379 F.3d 1177 (10th Cir. 2014). *Baxley* and *Burke* stand for the proposition that, in order to violate § 751, an individual must be subject to a term of incarceration (even if that term is being carried out at a residential facility). The Tenth Circuit has no such requirement, and notably, in *Foster*, the Tenth Circuit relied on its earlier ruling that a pre-trial detainee could violate §751, which is impossible in the Ninth Circuit. For these reasons, even if the Court finds any support in *Foster* for the government's argument, it cannot follow it to the extent *Foster* is in conflict with the Ninth Circuit.

1
2

## C.    The Rule of Specialty Requires This Court to Analyze Dual Criminality for Each New Charge

3
4
5
6
7
8
9
10
11
12

In extradition matters, "[t]he doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite." *Quinn v. Robinson*, 783 F.2d 776, 783 (9th Cir. 1986) (citing *United States v. Rauscher*, 119 U.S. 407, 420–21, 7 S.Ct. 234, 241, 30 L.Ed. 425 (1886)).  For this reason, in order for Canada to try Mr. Froude on the three charges it seeks to extradite Mr. Froude for, the government must show that the dual criminality requirement is met for each new charge.  In other words, if the Court determines that dual criminality is met for one, but not for another new charge, it should only permit extradition on the charge for which dual criminality has been shown.

13
14
15
16
17
18
19
20
21
22

"Dual criminality requires that an accused be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting nations." *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998).  Although dual criminality permits *some* difference between the statute in the requesting country and the statute in the country assessing whether extradition is appropriate, the conduct alleged "must be substantially analogous" to felonious conduct in the requested state. *Id.*, 138 F.3d at 764.  In order to satisfy dual criminality, the statute charged and the statute cited must be able to "both be used to punish the acts with which [the individual] is charged." *Id.*, 138 F.3d at 766.  Otherwise, the "analogy" requirement of dual criminality is not met. *Id.*

23
24
25
26
27
28

In this matter, the government originally argued that dual criminality was met under the federal escape statute, 18 U.S.C. § 751.  At the hearing, the Magistrate Judge *sua sponte* inquired whether the charge alleging that Mr. Froude failed to remain in Canada meets dual criminality because it may be analogous to 18 U.S.C. § 1073.  The defense addresses that question below.  The Magistrate also inquired whether the Canadian government could pursue all three charges if the Court found dual criminality

11

met as to any single one of them, but the rule or doctrine of specialty prohibits that.  For that reason, the Court must only permit extradition on the charges, if any, it finds that the dual criminality requirement has been met.

**D.    The Charge Alleging that Mr. Froude Failed to Reside in a Community Correctional Centre or Facility Fails to Meet Dual Criminality**

The government argues that the alleged conduct -- failing to reside at a community correctional center -- is analogous to the crime of escape in the United States, 18 U.S.C. § 751(a).  In order to commit the crime of escape pursuant to § 751(a), an individual must be in "custody" of the Attorney General or authorized representative, or from any institution or facility in which he is confined by the direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest.  *See* 18 U.S.C. § 751(a).[8]

The government argues in its supplemental brief that dual criminality is met for this charge because (1) the correctional Services of Canada ("CSC") is analogous to the United States Bureau of Prisons and (2) and the CSC owned and operated the CCC where Mr. Froude was residing as a condition of his long-term supervision order.  *See* Gov's Supplement Brief at 2; Dkt. 28 at 4.  The government also presented additional argument and evidence regarding the structure of supervision in Canada and the restrictions imposed on Mr. Froude.  For the reasons set forth below, the government's evidence confirms that Mr. Froude was not in "custody," and the government's remaining arguments misread the requirements of §751.  Mr. Froude's alleged conduct

---

[8]    The government argues that Section 753.3(a) of the Canadian Code sets out the provision that required Mr. Froude to remain in Canada.  The defense could not find that provision.  The defense located conditions of release set forth in the Corrections and Conditional Release Regulations.  The Canadian Code only prescribes the potential punishment available for an individual who, without reasonable excuse, fails or refuses to comply with long-term supervision.  *See* Canadian Criminal Code § 753.3(1).

1   fails to satisfy dual criminality, and he cannot be extradited to face a charge for failing

2   to reside at a community confinement center.

3   **E.    Mr. Froude Was Not In "Custody"**

4          Even if an individual ordered to reside at a halfway house as a condition of

5   supervised release could be prosecuted under § 751 depending on how restrictive the

6   conditions were at that facility, the conditions of the community center at which Mr.

7   Froude was residing are similar to conditions at a U.S. halfway house that would not

8   support a determination that someone residing there was in "custody."  The conditions

9   imposed on Mr. Froude at the facility at which he was residing were having security

10  there, having accompanied community access, accounting for residents twice a day and

11  sometimes at night, taking samples of urine, and prohibition on alcohol, drugs,

12  weapons, and pornography.  These are conditions that are similar to probation.  In

13  *United States v. Burke*, 694 F.3d 1062, 1064-65 (9th Cir. 2012), the government

14  presented evidence that the facility where the defendant was residing had a curfew,

15  limited visitors, assigned beds, restricted telephone use, and required residents to advise

16  staff of their comings and goings in order to leave the premises.  *Id.* at 1065.  In other

17  words, in *Burke*, the defendant was on a "conditional[] release from incarceration."  *Id.*

18  A similar situation is found here.  Mr. Froude could leave the facility, but would be

19  checked upon daily -- just like the defendant in *Burke*.  The conditions of urine testing

20  and prohibitions on "contraband" are similar to standard conditions of supervised

21  release and probation in this district.  *See* General Order 05-02, available at:

22  https://www.cacd.uscourts.gov/sites/default/files/general-orders/GO-05-02.pdf.  Even

23  in *Burke*, the defendant was placed on "escape or abscond status" after failing to return

24  to the facility.  As the Ninth Circuit noted, that did not mean that the defendant was in

25  "custody" for purposes of the escape statute.  *See Burke*, 694 F.23d at 1064 (noting that

26  the same was true for the defendant in *United States v. Baxley*, 982 F.2d 1265 (9th Cir.

27  1992)).

28          For these reasons, *Burke* is instructive in this case, and the Court should conclude

13

that Mr. Froude's alleged conduct -- failing to reside at the community center -- fails to meet dual criminality because it would not constitute the crime of escape, under § 751, in the United States.[9]

## F.    Even if He was in "Custody," Mr. Froude's Alleged Conduct Is Not Analogous to Being in Custody "of the Attorney General"

The government's concession regarding who imposed Mr. Froude's condition that he reside at a community confinement center, as well as the structure of § 751, indicates that Mr. Froude's conduct is not analogous to conduct that would violate § 751.

The government concedes that the condition of the long-term supervision order that Mr. Froude reside at a community confinement center was imposed not by the Court and not by the Correctional Services of Canada, but by the Parole Board of Canada. *See* Gov's Supplemental Brief at 8; Dkt. 28 at 10. As the government notes, the Parole Board of Canada is independent from the Correctional Services of Canada. As the government also notes, this specific condition of confinement is not a standard condition of confinement imposed pursuant to regulations set forth in the Corrections and Conditional Release Act. Rather, the Parole Board uses its discretion to determine whether this condition should be imposed.

The Parole Board of Canada is not analogous to the Attorney General for purposes of § 751, and thus the conduct alleged does not meet either of first two clauses of §751(a) (prohibiting escaping from the custody of the Attorney General or his authorized representative, or from any institution or facility in which one is confined by direction of the Attorney General). The conduct alleged cannot meet the third clause of § 751(a), because that clause requires that the custody be by virtue of a process issued

---

[9]    The Court should also consider that an individual in the United States who is residing at a residential facility while on supervision, or while on pretrial release, would not accumulate any credits toward a sentence of imprisonment. *See Reno v. Koray*, 515 U.S. 50 (1995).

14

by a court, judge, or magistrate judge.  No court or judge imposed this condition of supervision on Mr. Froude.  Finally, the conduct cannot meet the fourth clause of § 751(a), because it does not relate to an escape from an arrest.

Separately, the structure of the §751, and the apparent purposes of the various clauses of the statute, confirm that the alleged conduct is not substantially analogous to escape.  The first two clauses of the statute appear to be directed toward individuals who are serving a term of imprisonment.  Indeed, traditionally, the escape statute is used to prosecute individuals who escape during their term of imprisonment or fail to show up for a sentence of imprisonment.  *See, e.g., United States v. Peterson*, 592 F.2d 1035 (9th Cir. 1979).[10]  The first clause prohibits escaping from the custody of the Attorney General, which appears to target terms of imprisonment.  The second clause can be interpreted to prohibit escape in situations where, in lieu of traditional custody, an individual is permitted by the Attorney General to serve a term of imprisonment at a facility (which regularly occurs the last three to six months of a term of imprisonment).  The third clause appears to be the broadest clause, permitting prosecution where custody has been ordered by a Court.  None of those situations apply in this case.  Mr. Froude has completed his term of imprisonment, and his residence at a community confinement center was not *in lieu* of a term of imprisonment.  No court had imposed this specific condition of his supervision.  Because Mr. Froude has completed his term of imprisonment and no court has ordered that he reside at the community confinement center, the escape statute does not proscribe the conduct alleged against Mr. Froude, and dual criminality has not been met as to this charge.

---

[10]   The defense could not find cases distinguishing between the different clauses of the statute, but does note that in each of the cases cited by the parties, there existed a court order that mandated the "custody" at issue.

15

**G.      The Charge Against Mr. Froude That He Unlawfully Failed to Remain In Canada Does Not Meet Dual Criminality**

The government argues that 18 U.S.C. § 1073 prohibits analogous conduct to that charged in Canada against Mr. Froude, but they are wrong.

Section 1073 prohibits traveling in interstate or foreign commerce *with the intent of*, inter alia, avoiding prosecution, or custody or confinement after conviction. Because Mr. Froude's alleged conduct lacks any intent to avoid either prosecution or custody or confinement after conviction, the conduct alleged fails to be analogous to the crime of fleeing to avoid prosecution.

In order to commit a crime under § 1073, one must not only leave the jurisdiction, but also have the intent to avoid prosecution.  But here, the conduct alleged is *only the act of leaving*.  In other words, it is not that Mr. Froude is alleged have engaged in a crime and then, intending to avoid prosecution or confinement for that crime, left Canada.   "It is true that the gravamen of the offense charged in the fugitive felon act is that the defendant fled a state with intent to avoid prosecution therein, and mere absence from the state of prosecution, though it renders one a fugitive from justice for interstate rendition  . . . . is not sufficient proof of the federal crime." *Barrow v. Owen*, 89 F.2d 476, 478 (5th Cir. 1937).  Thus, the conduct, if it had occurred in the United States, would not have been analogous to fleeing a jurisdiction *with the intent to avoid prosecution*.

Similarly, the conduct alleged lacks an intent to avoid confinement or custody, because Mr. Froude had already been released from prison when he left Canada, not that he had been convicted and did not want to report for confinement.  *See, e.g., United States v. Alcarez Camacho*, 340 F.3d 794, 797 (9th Cir. 2003) (noting that Section 1703 applied to failure to report for sentencing).  Here, there was no upcoming

16

sentencing which the government could argue could form the basis of the intent to leave the jurisdiction.[11]

Because intent is a required element for a prosecution of 18 U.S.C. § 1703, and it is missing from the conduct alleged against Mr. Froude for leaving Canada fails to meet the dual criminality requirement of extradition, and Mr. Froude cannot be extradited to Canada on this charge.

## H.   The Charge Alleging that Mr. Froude Failed to Obey the Law and Keep the Peace Fails to Meet Dual Criminality

The government argues that the charge alleging that Mr. Froude failed to obey the law and keep the peace is analogous to §751. It is not clear from the Information filed in Canada that the conduct alleged against Mr. Froude that forms the basis of this charge is leaving the residential facility. *See* Exhibit D to Karen Shai Affidavit. Nor has the government presented evidence on what it means to fail to obey the law and keep the peace, for purposes of violating a supervision order in Canada. As stated, failing to obey the law and keep the peace could mean various types of conduct that could be alleged against Mr. Froude. As such, it cannot be determined that the conduct alleged would be a felony in the United States. As charged and alleged, there is no analogy, let alone substantial analogy, between this charge and the escape statute in the United States, and for that reason this charge fails to meet dual criminality.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  July 11, 2016          By  /s/ Ashfaq Chowdhury
                                   ASHFAQ CHOWDHURY
                                   Deputy Federal Public Defender

---

[11]   A comparison to the conduct, if it had occurred in the United States, is illustrative. If Mr. Froude were subject to supervision in the United States and left the country, not because he had engaged in conduct that could lead to prosecution and not because he was to report for confinement, he would not be subject to prosecution under § 1073 because the intent element would be missing.